NO. 07-09-00102-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 20, 2010

_____

MICHELLE ROCHA, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF RAYMOND
DWAYNE BINGLE, APPELLANT

v.

POTTER COUNTY, TEXAS, ET AL., APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 91,748-B; HONORABLE DAVID L. GLEASON, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Michelle Rocha, appeals the trial court's grant of appellee's, Potter County, plea to the jurisdiction and motion for summary judgment relating to Rocha's 42 U.S.C. § 1983 claims.[1]  We affirm.

_____

[1] Further reference to 42 U.S.C. § 1983 will be to "§ 1983."

Factual and Procedural Background

On October 24, 2001, Raymond Bingle, the 19-year-old son of Rocha, was arrested on charges of aggravated sexual assault of a child and possession of drug paraphernalia. He was incarcerated in the Potter County Detention Center while awaiting trial on these charges. In accordance with Potter County Detention Center policy, Bingle was screened to assess whether he presented any special housing, medical, or mental health issues. During this screening, Bingle denied having ever attempted to commit suicide and denied having suicidal thoughts at the time of the screening. Nonetheless, the screening officer concluded that Bingle presented special management concerns due to "psychological impairment," "mental deficiency," and "suicide risk."

On or about December 11, 2001, Bingle was involved in a fight with another inmate. As a result of this incident, Bingle was rescreened. The rescreening again classified Bingle as presenting management concerns due to "psychological impairment," "mental deficiency," and "suicide risk." Bingle was served with a review board notice for his involvement in the fight, but he waived his right to a hearing and accepted a sanction of ten days of lockdown and loss of privileges. Bingle was placed in a "fishbowl cell" that allowed officers to more closely observe the inmates in the cells. However, it appears that the reason that Bingle was placed in this cell was due to his involvement in the fight rather than because of his suicide risk.

On December 25, 2001, Bingle was denied the opportunity to visit with his family because the visitation list had been filled. This upset Bingle and he threatened to "throw

a fit" or "do something" if he was not allowed to see his family. However, Bingle did not expressly threaten to commit suicide.

On December 26, 2001, Officers Gasparovich and Dorrance went on duty overseeing the A pod in which Bingle was being housed. Gasparovich and Dorrance were not aware that Bingle had been classified as a suicide risk. As a result, Bingle was checked in the same manner as any other inmate housed in A pod. When Gasparovich and a trustee took Bingle his breakfast, the trustee discovered that Bingle had hanged himself with a sheet that he had tied to the railing of his shower. Gasparovich called a medical officer, who checked Bingle for a pulse, but did not find one.

On December 31, 2003, Rocha, Bingle's mother, filed her First Amended Petition wherein she claimed, *inter alia*, that appellees, Potter County and Sheriff Mike Shumate, were responsible for Bingle's suicide pursuant to § 1983 and the Texas Tort Claims Act, see TEX. CIV. PRAC. & REM. CODE ANN. ch. 101 (Vernon 2005). On May 23, 2008, as a result of a rule 11 agreement between the parties, Rocha filed her Second Amended Petition, which reasserted her § 1983 claims but omitted her claims under Texas law. On October 13, 2008, Potter County and Shumate filed their Plea to the Jurisdiction and Motion for Summary Judgment. In her response, Rocha voluntarily dismissed her claims against Shumate as being duplicative in nature. On February 28, 2009, the trial court entered its judgment granting Potter County's Plea to the Jurisdiction and Motion for Summary Judgment, dismissing Rocha's claims, and assessing costs of court against Rocha. On March 30, 2009, Rocha filed her Notice of Appeal.

3

By one issue, Rocha appeals. Rocha contends that more than a scintilla of evidence was presented to raise a genuine issue of material fact on her § 1983 and Texas Tort Claims Act claims[2] and that there were insufficient grounds for the trial court to grant Potter County's Plea to the Jurisdiction. While Rocha's appellate brief presents only one issue, we will address the trial court's grant of Potter County's jurisdictional plea and summary judgment motion separately.

Plea to the Jurisdiction

Standard of Review

A plea to the jurisdiction is a proper pleading for challenging a court's subject matter jurisdiction over a claim. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). When a plea to the jurisdiction is filed, the plaintiff bears the burden of alleging facts that affirmatively show that the trial court has subject matter jurisdiction over plaintiff's claims. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). As such, consideration of a plea to the jurisdiction must begin by focusing on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate the trial court's jurisdiction over the case. State v. Holland, 221 S.W.3d 639, 642-43 (Tex. 2007). However, in some instances, evidence may be relevant to the jurisdictional issue. Id. at 643. When evidence is relevant to the jurisdictional issue, the reviewing court must consider this evidence to determine whether the evidence raises a

_____

[2] While Rocha's issue complains of the dismissal of her claims under the Texas Tort Claims Act, as previously noted, these claims were abandoned in Rocha's live pleading. Consequently, at the time of the trial court's dismissal, Rocha's state law claims were no longer part of the case.

4

fact question regarding the jurisdictional issue. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004). If the evidence raises a fact question regarding the jurisdictional issue, the court cannot grant the plea and the fact question must be resolved by the fact finder. Id. at 227-28.

Generally, a county has no sovereign immunity from a § 1983 claim. County of Dallas v. Sempe, 151 S.W.3d 291, 299-300 (Tex.App.—Dallas 2004, pet. dism'd w.o.j.). To present a valid claim for a violation of § 1983, a plaintiff must plead facts showing that: (1) a policy or custom existed, (2) the governmental policymakers actually or constructively knew of the policy's existence, (3) a constitutional violation occurred, and (4) the custom or policy served as the moving force behind the violation. Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-33 (5th Cir. 1996). A plaintiff's description of the policy or custom and its relationship to the constitutional violation cannot be conclusory; it must contain specific facts. Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997).

Analysis

A review of Rocha's live pleading reveals that each of these elements of a § 1983 claim were alleged. She specifically alleges that Potter County had eight policies or customs of which policymakers were aware and that were the moving force behind a violation of Bingle's Fourth and Fourteenth Amendment rights. However, our review of Rocha's live pleading leads to the conclusion that the factual allegations do not support her claims of Potter County's policies and customs. The facts pled are not sufficient to support that Potter County had these claimed policies or customs nor how these

5

policies or customs were the moving force behind the violation of Bingle's constitutional rights. Thus, we conclude that Rocha's live pleading fails to provide specific facts sufficient to present a *prima facie* claim that Potter County violated Bingle's constitutional rights. See id.; Meadowbriar, 81 F.3d at 532-33.

However, both parties presented significant amounts of evidence to the trial court that might be relevant to the jurisdictional issue. We must consider this evidence. See Miranda, 133 S.W.3d at 227. Since the issue of whether this evidence is sufficient to establish a *prima facie* case for a § 1983 claim is subsumed within the issue of whether Rocha has presented sufficient evidence to raise a fact question on the elements of her claim, we will review this jurisdictional evidence in our analysis of Rocha's issue regarding the trial court's grant of summary judgment. See id. However, we will conclude that the evidence does not raise a fact issue regarding whether Rocha has sufficiently pled a cause of action under § 1983.

Consequently, we affirm the trial court's grant of Potter County's Plea to the Jurisdiction.

## Summary Judgment

By its summary judgment motion, Potter County asserted both no-evidence and traditional grounds. See TEX. R. CIV. P. 166a(c), (i); Binur v. Jacobo, 135 S.W.3d 646, 650-51 (Tex. 2004) (permitting motions combining no-evidence and traditional grounds). We review both no-evidence and traditional grounds for summary judgment *de novo.* See Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 156-57 (Tex. 2004).

6

Standard of Review – No-Evidence

Because a no-evidence motion for summary judgment is, essentially, a pretrial directed verdict, we apply the same legal sufficiency standard. Kelly v. Demoss Owners Ass'n, 71 S.W.3d 419, 423 (Tex.App.–Amarillo 2002, no pet.). A no-evidence motion for summary judgment is properly granted unless the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the elements challenged by the motion. See TEX. R. CIV. P. 166a(i); Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). On the other hand, less than a scintilla of evidence has been described as evidence "so weak as to do no more than create a mere surmise or suspicion." King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). In reviewing a summary judgment, we must view all of the summary judgment evidence in the light most favorable to the nonmovant and indulge every reasonable inference in his or her favor as well. See City of Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005). However, when the summary judgment does not specify the grounds asserted in the motion that it was premised upon, it will be affirmed if any of the grounds presented are meritorious. Kelly, 71 S.W.3d at 422.

Standard of Review – Traditional

In reviewing a traditional summary judgment, the following standards apply:

1. the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

7

2.  in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and

3.  every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)).  Summary judgment is proper if the defendant disproves at least one element of the plaintiff's claims or establishes all elements of an affirmative defense to each claim.  Id.

Law Applicable to Rocha's § 1983 Claims

To establish a violation of § 1983, a plaintiff must prove that: (1) a policy or custom existed, (2) the governmental policymakers actually or constructively knew of the policy's existence, (3) a constitutional violation occurred, and (4) the custom or policy served as the moving force behind the violation.  Meadowbriar, 81 F.3d at 532-33.  Liability for violations of constitutional rights may be established by a § 1983 claim, but § 1983 will not provide a remedy for violations of duties of care arising out of tort law, such as negligence.  Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  Pretrial detainees possess a constitutional right to basic needs, such as medical care and safety, that flows from the procedural and substantive due process guarantees of the Fourteenth Amendment.  Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996).  The failure to provide adequate protection against a pretrial detainee's known suicidal impulses is actionable under § 1983.  Rhyne v. Henderson County, 973 F.2d 386, 391-92 (5th Cir. 1992).

8

Rocha contends that her claims state challenges to both a condition of confinement and an episodic act or omission. Each of these types of challenges is governed by a different standard of review. See Flores v. County of Hardeman, 124 F.3d 736, 738 (5th Cir. 1997). The Fifth Circuit has interpreted § 1983 to prohibit plaintiffs from conflating claims concerning a prison official's act or omission with a condition of confinement complaint. See Anderson v. Dallas County, 286 F.App'x 850, 858 (5th Cir. 2008) (unpub. op.) (citing Flores, 124 F.3d at 738). A condition of confinement claim "is a constitutional attack 'on general conditions, practices, rules[,] or restrictions of pretrial confinement.'" Flores, 124 F.3d at 738 (quoting Hare, 74 F.3d at 644). By contrast, a claim is an episodic act or omission claim when the harm complained of arises from a particular act or omission of one or more officials. Id. (citing Hare, 74 F.3d at 645).

Rocha appears to premise her contention that she has stated a condition of confinement claim on Potter County's inadequate training and supervision and failure to comply with the policies in place when Bingle was assessed to be a suicide risk. However, proof of a single incident generally will not support a finding of inadequate training as a matter of custom or policy. Forgan v. Howard County, 494 F.3d 518, 522 (5th Cir. 2007). Looking at Rocha's complaints as a whole reveals that she does not contend that Potter County did not have policies in place that, if followed, would have prevented Bingle's suicide. Rather, Rocha's contentions relate to the failure of Potter County's employees to follow the policies that were in place. Rocha's contentions are very similar to the claims asserted in other § 1983 claims based on suicides committed by detainees, and claims based on these sorts of contentions have consistently been

9

determined to present episodic act or omission claims.  See Forgan, 494 F.3d at 522 (claims of deviation from suicide policy require proof of deliberate indifference); Anderson, 286 F.App'x at 859 (failure to follow policies is a "classic episodic-act-or-omission case"); Flores, 124 F.3d at 738 (failure to take precautions under policy is an episodic act or omission case); Hare, 74 F.3d at 647-48 (failure to take a suicide threat seriously states an episodic act or omission case).  Therefore, we will apply the standard applicable to episodic act or omission claims in our review of Rocha's § 1983 claims.

Having concluded that Rocha's § 1983 claims are episodic act or omission claims, to overcome summary judgment, Rocha must prove that a genuine issue of material fact exists that (1) a county employee violated Bingle's constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a county policy or custom adopted or maintained with objective deliberate indifference.  Scott v. Moore, 114 F.3d 51, 54 (5th Cir. 1997).

A prison official acts with subjective indifference if he knows that an inmate faces a substantial risk of serious bodily harm, yet disregards that risk by failing to take reasonable measures to abate it.  Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Stated another way, a plaintiff must show both that the employee was aware of facts from which an inference of an excessive risk to the prisoner's safety could be drawn, and that the employee actually drew an inference that such potential for harm existed. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998).  Deliberate indifference is an extremely high standard to meet.  Gobert, 463 F.3d at 346.  It is the subjective

10

culpability that is key; merely finding that a reasonable person would have known or that the defendant should have known is insufficient. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

If a plaintiff is unable to show that a county employee acted with subjective deliberate indifference, the county cannot be held liable for an episodic act or omission. See Flores, 124 F.3d at 739. However, proof of an employee's subjective indifference is insufficient without showing that the employee's act resulted from a county policy adopted and maintained with objective deliberate indifference to the inmate's rights. See Scott, 114 F.3d at 54. A county acts with objective deliberate indifference if it promulgates or fails to promulgate a policy or custom despite "the known or obvious consequences that constitutional violations would result." Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001) (internal quotations omitted). Further, there must be a direct causal link between the county policy and the constitutional violation. Id. at 580.

Analysis

In the present case, Rocha contends that the district court erred in granting summary judgment because genuine issues of fact exist. Rocha contends that Potter County employees were deliberately indifferent to Bingle's medical needs because, while Bingle was assessed to be a suicide risk, this risk was not communicated to the officers on duty and, as a result, those officers did not comply with the county's suicide prevention policy. In addition, Rocha contends that the failures of the officers on duty were the result of Potter County's policy or custom of allowing officers with inadequate training and supervision to be responsible for implementing these policies.

11

Because establishment of subjective deliberate indifference requires proof that the county's employee was actually aware of a substantial risk of serious bodily injury, we conclude that Rocha has failed to present more than a scintilla of evidence to establish her § 1983 claim. No evidence raised a fact issue regarding whether Officers Gasparovich and Dorrance were ever made aware that Bingle was on a suicide watch. In fact, Rocha complains that the officers were not aware of Bingle's suicide risk.[3] In addition, Rocha has presented no evidence that Bingle acted in a manner that would give rise to an inference that he was a risk to commit suicide. Because Rocha has presented no evidence that either officer on duty knew that there was a substantial health risk, Officers Gasparovich and Dorrance could not have been deliberately indifferent toward such risk. See Calton v. Dallas County, No. 3:05-CV-2022-N, 2007 U.S. Dist. LEXIS 97628, at *16-*17 (N.D. Tex. June 25, 2007) (notice of suicide risk contained in medical record is insufficient without evidence of actual knowledge of suicide risk). Even if the evidence were sufficient to raise a fact issue regarding whether the officers should have known that Bingle was a suicide risk, at best, a fact issue would be raised as to whether the officers were negligent in failing to follow Potter County's suicide prevention policy, but negligence will not support liability under § 1983. See Farmer, 511 U.S. at 837-38.

Further, while not named in Rocha's petition, Rocha seems to contend that certain Potter County employees were aware of the suicide risk posed by Bingle, yet failed to ensure that the suicide prevention policy was implemented. However, the

_____

[3] Actually, the facts known to the officers in charge at the time of Bingle's suicide would lead to the more likely inference that he was housed in the A pod because of his recent involvement in a fight rather than because he was under a suicide watch.

12

evidence would establish only that an Officer A. Moore and Shift Sergeant James Cook were aware of the suicide risk noted in the assessment and reassessment. However, there is no evidence that either of these officers ignored the risk of harm to Bingle. These officers prepared or acknowledged that the appropriate documentation was completed so that Bingle would be appropriately treated as a suicide risk. In addition, Rocha's pleading states that she advised an unnamed duty nurse about the possibility that Bingle was a suicide risk. However, Rocha's pleading acknowledges that she was reassured that Bingle would be screened for suicide risk, which the evidence establishes was done. Rocha further contends that she advised "several" unnamed members of the Detention Center's personnel that Bingle was afraid of other inmates. She was assured that Bingle would be placed in a cell by himself for his safety and well-being. Bingle was, in fact, placed in a cell by himself. Finally, Rocha contends that she informed unnamed Detention Center personnel that Bingle had discussed suicide during the 2001 holidays. However, because Rocha does not identify the individual or individuals to whom she gave this information, there is no evidence presented that those individuals failed to take appropriate precautions. We reiterate that a person having subjective knowledge that a detainee poses a substantial suicide risk is insufficient to establish subjective deliberate indifference without further proof that the person disregarded the risk by failing to take reasonable precautions. Gobert, 463 F.3d at 346.

It appears, from her live pleading and appellate brief, that Rocha's contentions are predicated on the concept of collective knowledge. While the doctrine of collective knowledge does apply to some actions of law enforcement, see Woodward v. State,

13

668 S.W.2d 337, 345-46 (Tex.Crim.App. 1984) (probable cause determination may be based on what all officers knew rather than what the arresting officer personally knew), it does not apply to § 1983 claims. See Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007). Further, it is clear that the test for deliberate indifference requires an analysis of what the individual actors knew and how they acted in the face of this information. See Gobert, 463 F.3d at 346.

Rocha bases her claims, in large part, on Potter County's alleged violations of Texas Jail Standards. However, violations of state law are not actionable under § 1983. See San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 701 n.4 (5th Cir. 1991) (citing Jones v. Diamond, 594 F.2d 997, 1011 (5th Cir. 1979)). Administrative protocols do not establish constitutional rights for treatment of detainees. Whitt v. Stephens County, 236 F.App'x 900, 902-03 (5th Cir. 2007).

Rocha presents specific arguments that Potter County's acts or omissions were the moving force behind Bingle's suicide and that Potter County's failure to follow its suicide prevention policy constituted a "State-Created Danger." Both of these arguments go to the causation element necessary for a § 1983 claim and, as addressed above, if a plaintiff fails to establish that the defendant was both subjectively and objectively deliberately indifferent, causation is not reached.

Additionally, while Rocha has failed to present any evidence that would support her claim that any Potter County employee acted with subjective deliberate indifference in regard to Bingle's suicide, we will address Rocha's contention that Potter County failed to properly train or supervise its employees and that such failure was the moving

force behind Bingle's suicide.[4]  To establish a claim for failure to train or supervise under § 1983, Rocha must show that: (1) Potter County failed to train or supervise the officers involved, (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Bingle's rights, and (3) the failure to train or supervise constituted deliberate indifference to Bingle's constitutional rights. Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001).  Deliberate indifference cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of harm.  Id.  This is so because to hold a county liable for the negligent acts of its employees would state a claim for *respondeat superior*, which is not actionable under § 1983.  Ashcroft v. Iqbal, 2009 U.S. LEXIS 3472, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  To establish that Potter County was deliberately indifferent in its training and supervision, Rocha "must demonstrate a pattern of violations and that the inadequacy of the training and supervision is 'obvious and obviously likely to result in a constitutional violation.'"  Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (quoting Thompson, 245 F.3d at 459).

---

[4] While the failure to train or supervise a specific individual could state a claim for an episodic act or omission, Rocha's claims, as pled, would seem to require proof of a systemic failure and, therefore, be more properly classified as a condition of confinement.  However, the Fifth Circuit has addressed claims of inadequate training and supervision as part of episodic act or omission cases.  See Brumfield v. Hollins, 551 F.3d 322, 327-29 (5th Cir. 2008); Anderson, 286 F.App'x at 859-63 (5th Cir. 2008); Flores, 124 F.3d at 738-39.  Thus, without expressing any opinion on whether Rocha's training and supervision claims constitute episodic act or omission claims, we will address these claims.

The evidence does not raise a genuine issue of material fact regarding the training and supervision of Gasparovich or Dorrance.[5]  The evidence establishes that Gasparovich had received a temporary jailer's license prior to the date of Bingle's suicide.  Rocha's complaints focus on the fact that, on the date of Bingle's suicide, Gasparovich had not received classroom training in suicide prevention or even in performing cell checks.  However, there is no evidence in the record that Gasparovich's "on-the-job" training did not include practical instruction in performing these tasks.  Further, Rocha has identified no statute or regulation that prohibits temporary jailer's license holders from performing the tasks required of a fully licensed jailer.  In fact, the law authorizes the holder of a temporary jailer's license to perform the functions of a jailer.  See TEX. OCC. CODE ANN. § 1701.310 (Vernon Supp. 2009).  Thus, the evidence establishes that Potter County was in compliance with the applicable law in allowing Gasparovich to oversee the A pod of the Potter County Detention Center on the night of Bingle's suicide.  Further, Rocha's evidence in no way establishes a pattern of violations such that the inadequacy of training and supervision is obvious and obviously likely to result in a constitutional violation.  See Cousin, 325 F.3d at 637.

Rocha additionally argues that a genuine issue of material fact is raised as to Potter County's training and supervision based on Potter County's ratification of Gasparovich's actions that is the result of Potter County failing to take corrective or disciplinary action against Gasparovich.  Ratification of an officer's actions or omissions can impact whether a single incident can support a claim of inadequate training and

---

[5] Actually, Dorrance is identified by Rocha not as an individual that lacked sufficient training, but rather as the individual that had been trained sufficiently that she could have prevented Bingle's suicide if she had properly supervised Gasparovich.

16

supervision.  See Grandstaff v. City of Borger, 767 F.2d 161, 171 (5th Cir. 1985). However, as addressed above, there is no evidence that Gasparovich was aware that Bingle posed a suicide risk.  As such, there is no evidence that her actions were not appropriate for a pretrial detainee that was not classified as a suicide risk.

For the foregoing reasons, we conclude that Rocha has failed to provide any evidence that would raise a genuine issue of material fact regarding her § 1983 claims. Consequently, we affirm the trial court's grant of summary judgment in favor of Potter County.

## Spoliation of Evidence

Finally, Rocha contends that Potter County was guilty of spoliation of evidence. Rocha's allegation is that Potter County destroyed videotaped evidence that would establish how often officers checked Bingle's cell.  But, assuming that we were to conclude that Potter County was guilty of spoiling this evidence, such evidence would have no bearing on whether Gasparovich was aware that Bingle posed a suicide risk. Thus, even if we assume that Potter County spoiled this evidence and, therefore, presume that the evidence was unfavorable to Potter County, see Brumfield v. Exxon Corp., 63 S.W.3d 912, 920 (Tex.App.—Houston [14th Dist.] 2002, pet. denied), Rocha has still not presented evidence that raises a genuine issue of material fact regarding her § 1983 claim.

Conclusion

Having overruled Rocha's sole appellate issue, we affirm the trial court's judgment granting Potter County's Plea to the Jurisdiction and Motion for Summary Judgment.

Mackey K. Hancock
Justice