NO. 07-11-0415-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 11, 2012

_____

THE STATE OF TEXAS,

Appellant

v.

ANTHONY GRANVILLE,

Appellee

_____

FROM THE 278TH DISTRICT COURT OF WALKER COUNTY;

NO. 25,299; HONORABLE KENNETH H. KEELING, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., and HANCOCK  and PIRTLE, JJ.

Is a cell phone really a pair of trousers?  The State argues as much here, at least when both come from someone who has been arrested.  We disagree and affirm the trial court's decision to suppress evidence discovered during a warrantless search of an impounded cell phone.

*Background*

The cell phone in question belonged to Anthony Granville and was taken from him after being arrested and jailed for causing a disturbance at his school.  While the

phone was within official custody, an officer, having nothing to do with the arrest or any investigation into the disturbance, acquired it. He did so because he had been told that Granville took a picture of a student urinating in a urinal at school the day before. This act was purportedly a crime which stimulated the officer to begin his search for evidence of it. So, without a search warrant, he ventured down to the jail, took Granville's cell phone from the property room, turned it on, and began scrolling through it for the picture in question. It was eventually discovered on the device, and that led to Granville's indictment for "Improper Photography or Visual Recording."

Granville moved the trial court to suppress the evidence garnered from the phone. He believed that the officer's actions constituted an unlawful search. The trial court agreed and ordered the evidence suppressed.

*Authority*

The standard of review is a familiar one. It is one of abused discretion. *Swain v. State,* 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). Under it, we defer to the trial court's resolution of historical fact but consider *de novo* its conclusions of law. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). So too does it obligate us to consider the totality of the circumstances in making our decision. *Kothe v. State,* 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

Next, the Fourth Amendment to the United States Constitution as well as article I, § 9 of the Texas Constitution protect against unreasonable searches and seizures conducted by the government. Furthermore, a search conducted without a warrant is presumptively unreasonable, *United States v. Karo*, 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) and, when it is initially shown that a warrantless search occurred,

2

the State has the burden of legitimizing it in some manner.  *Roth v. State*, 917 S.W.2d 292, 299 (Tex. App.–Austin 1995, no pet.).   We now address whether the State carried its burden.

*Discussion*

*1. Tangential, Yet Pertinent, Observations*

Various preliminary issues warrant comment.  The first concerns whether the officer's actions *viz* the cell phone constituted a search.  No one disputes that they do, nor do we.

Second, when asked about the grounds upon which it relied to justify perusing the contents of the cell phone, the prosecutor represented to the trial court that ". . . we are not arguing this is a search incident to arrest."  Rather, "[t]his is simply a probable cause search of jail property that is a person's effects when they go to jail" and various authorities "basically say you don't have any expectation of privacy and [sic] what is in your clothes."  Given the limited grounds proferred to support the search, the State's effort to attack the trial court's decision by now invoking legal theories related to searching incident to arrest or searching in "good faith" or searching under exigent circumstances were not preserved for consideration.  This is so because grounds asserted on appeal to support an appellant's contention must comport with those uttered at trial.  *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).   If they differ, then the new ones cannot be considered by us since the trial court was denied the chance to assess them.  *See Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (recognizing that the need to preserve objections is founded upon the policy of affording the trial court the first opportunity to correct purported mistakes).

Third, the existence of probable cause to believe a crime occurred that justified a search was broached at trial. The accused argued that no such probable cause existed, given the absence of any evidence suggesting that the student whose picture was taken failed to consent. As indicated in its findings of fact and conclusions of law, the trial court found that there was no probable cause justifying the search. The State attacks that conclusion here by arguing, among other things, that "the victim was an autistic student at the high school" and "[t]hat alone [was] sufficient for probable cause that the photograph was taken without his consent." No evidence was proffered to support the utterance. Furthermore, individuals such as John Elder Robinson (author, special effects technician, and vintage car restorer), Thomas McKean (advocate), Dawn Prince-Hughes (recipient of a Ph.D in primate anthropology), Satoshi Tajiri (creator of Pokémon) and many other successful personages are autistic. Certainly the State would not suggest them to be presumptively incompetent simply because of their condition. Indeed, their success, and that of many autistic people, belies the uninformed syllogism offered to us. So, we reject it and caution others against tendering courts of appeal such baseless conclusions.

*2. Substantive Analysis*

Having disposed of the preliminaries, we now focus upon the crux of the dispute at bar. May an officer conduct a warrantless search of the contents or stored data in a cell phone when its owner was required to relinquish possession of the phone as part of the booking or jailing process? Again, we do not address situations involving the presence of exigent circumstances or other recognized exceptions to the warrant requirement. Instead, our review is limited to the grounds urged by the State during the

4

suppression hearing, those grounds being the presence of probable cause to believe a crime was committed and the supposed lack of any reasonable expectation of privacy in the device.

### a. Probable Cause

The first justification is easily disposed of. We know of no authority that allows the State to search property merely because its officers have probable cause to believe that a crime occurred and evidence of that crime can be found on the property to be searched. Those two indicia simply provide a basis to secure a warrant. *See State v. Jordan*, 342 S.W.3d 565, 568-69 (Tex. Crim. App. 2011) (describing the prerequisites to obtaining a warrant). They alone do not allow a search. Without such a warrant, the search is presumptively unreasonable. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). So, the State's suggestion that the search of the phone was permissible since probable cause to believe a crime had occurred and that Granville's cell phone contained evidence of it, without more, is wrong.

### b. Expectation of Privacy

As for the second and final ground, the State contends that the "search of that inmate's phone was an allowable search [because] . . . [i]t was jail property and therefore Granville had no expectation of privacy." It continues by arguing that it "was a phone taken pursuant to a lawful arrest and therefor was subject to being searched" and that the "manipulation of the phone is no different that [sic] looking at clothing or searching through papers an inmate has in his possession when . . . booked into jail." Added to those comments was one expressing that "society has never accepted or

suggested an individual has an expectation of privacy in a jail setting." Starting with the latter, we find it global and inaccurate.

It is true that prisoners have no reasonable expectation of privacy in their **cells**. *Hudson v. Palmer*, 468 U.S. 517, 525-26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Similarly true is the notion that "attributes of privacy of the home are not shared with a jail." *Hernandez v. State*, 819 S.W.2d 806, 815 (Tex. Crim. App. 1991). Yet, the prosecutor is simply wrong in saying that no expectation of privacy in a jail setting has been recognized. Indeed, authority cited in the State's own brief holds otherwise. And, we cite it to *Oles v. State*, 993 S.W.2d 103 (Tex. Crim. App. 1999), where our Court of Criminal Appeals said that arrestees still retain some level of privacy interest in personal effects or belongings taken from them after arrest. *Id.* at 108. Instead of having none, their expectations of privacy are "diminished." *McGee v. State*, 105 S.W.3d 609, 617 (Tex. Crim. App. 2003); *accord United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978) (stating that the "history and purpose underlying the [F]ourth [A]mendment . . . require that prisoners retain at least some degree of their fourth amendment protection"); *see also Waddleton v. Jackson*, 445 Fed. Appx. 808, 809 (5th Cir. 2011) (stating that a search and seizure conducted upon prisoners must "be reasonable under all the facts and circumstances in which they are performed"), *quoting Elliott v. Lynn,* 38 F.3d 188, 190-91 (5th Cir. 1994).

Next, we address the extent, if any, to which an arrestee has an expectation of privacy in the electronically stored data in his cell phone that was taken from him upon booking into jail. Forty years ago the average person could only dream of having a device that allowed individuals to walk about talking with whomever they chose. As

6

with many dreams, this one grew to reality. The younger generation most likely know little of the multi-pound instrument carried in a bag and slung over one's shoulder. Those devices eventually gave way to lighter, but nonetheless bulky, instruments often seen in television shows of the 1980's, like "Seinfeld." As the years went by, the mechanism came to look like the equipment Captain Kirk would flip open in the science fiction show "Star Trek" and command Scotty to "beam me up." And, much like the transponder of "Star Trek" fame, cell phones of today are small enough to be easily carried or hidden in pockets and purses.

Interestingly, though, while phones shrank in size, they expanded in versatility and technology. No longer are people limited to simply calling others over the airwaves. They now permit their owners to do much, much more. Indeed, they liken to mini-computers or laptops, capable of opening, in many respects, the world to those possessing them. In addition to seeking out information deemed important to its owner, cell phones have the capability of memorializing personal thoughts, plans, and financial data, facilitating leisure activities, pursuing personal relationships, and the like. Due to the abundance of programs or "apps" available, users also have the ability to personalize their phone; it is not farfetched to conclude that a stranger can learn much about the owner, his thought processes, family affairs, friends, religious and political beliefs, and financial matters by simply perusing through it. That such matters are intrinsically private cannot be reasonably doubted. The importance and private nature of such information has also led to the development of passwords, encrypted programs, and like security measures to prevent its disclosure. Given this, we cannot but hold that a person (whose category encompasses Granville) has a general, reasonable

7

expectation of privacy in the data contained in or accessible by his cell, now "smart," phone. *Accord Schlossberg v. Solesbee*, No. 10-6014-RC, 2012 U.S. Dist. LEXIS 4431, at *14-15 (D. Or. Jan. 13, 2012) (so holding). And that expectation is subject to protection under both the Fourth Amendment of the United States Constitution and article 1, § 9 of the Texas Constitution. But, our so holding does not end our work.

We must next assess the effect, if any, of Granville's incarceration upon his expectation of privacy. As previously mentioned, being jailed tends to diminish, though not necessarily vitiate, such expectations. *See Oles v. State*, *supra*. The extent to which they survive in property lawfully seized as part of the jailing process depends, in large part, upon the owner's exhibition of subjective expectations of privacy, whether they are reasonable, and society's recognition of the same. *Oles v. State*, 993 S.W.2d at 109-10. Furthermore, the amount of control retained by the owner over the item is also of importance because it influences whether the detainee's expectation can truly be said to be reasonable. *See id.* (discussing Oles' loss of control over his pants). His use of precautionary measures to maintain his privacy in the item may also impact the outcome. *Id.* at 109. And, it was the court's consideration of those indicia that eventually led it to hold that Oles had no reasonable expectation of privacy in the clothing taken from him when jailed. *Id.*

We cannot deny that application of the foregoing criteria would lead us to the same end regarding aspects of a confiscated cell phone. The latter, once impounded, would be outside the control of its owner. So too would it be exposed to physical manipulation. And, much like the situation in *Oles,* third parties also would be exercising control over and otherwise physically touching the device. Consequently, we

8

can see how our Court of Criminal Appeals could extend its interpretation of societal views in *Oles* to encompass a detainee's expectations of privacy in the physical structures of and components in a cell phone. But, here, we are not merely dealing with surfaces and spaces within clothing or cell phones.

We are looking at a privacy interest in data hidden within electrical components contained in the device as well as potential information not in the phone but accessible through its manipulation, that is, data saved on the internet. The State cited us to no evidence suggesting that such data can be scraped off the phone surfaces or components, like blood or DNA affixed to clothes. Nor is there evidence of record that the picture found by the officer was somehow playing or appearing upon the phone's screen. Quite the contrary. The cell phone had to be activated, or turned on, by the officer, and he had to pull up or scroll through the information imprinted on electronic chips to uncover the photo. It was not exposed to anyone happening to touch the item, which differentiates it from the miscellaneous things accessible on a prisoner's pants.

Evidence of the phone being off has other import, as well. That evinces some precautionary measure being taken to secure the data from curious eyes. The power button can be likened to the front door of a house. When on, the door is open and some things become readily visible. When off, the door is closed, thereby preventing others from seeing anything inside. And though some cell phones may require the input of a password before it can be used, no evidence suggests that Granville's was of that type. So, the officer's ability to venture into the phone's informational recesses by merely pressing the power button does not suggest that Granville's interest in assuring the privacy of his information was minimal. Whether the phone was locked or not via a

9

password, a closed door is sufficient to illustrate an expectation of privacy. *See Rodriguez v. State,* 653 S.W.2d 305, 307 (Tex. Crim. App. 1983)*.*

Now we turn to the subject of society recognizing (or not) an arrestee's privacy interest in a cell phone impounded during the booking process.[1] It must be remembered that Granville was simply a pretrial detainee. This is of import since detainees, in some ways, are accorded greater constitutional protection than a convicted individual. *Ex parte Green,* 688 S.W.2d 555, 556 (Tex. Crim. App. 1985) (punishment); *Rocha v. Potter County*, No. 07-09-001-2-CV, 2010 Tex. App. LEXIS 2859, at *10-11 (Tex. App.–Amarillo Apr. 20, 2010, no pet.) (due process). They also have a greater chance of being freed soon after their detention through posting bond or other measure. In fact, if the officer who took the cell phone is to be believed, Granville was subject to being released quickly, given that he was arrested for a class C misdemeanor. It also lessens the duration of any control law enforcement officials may exercise over the instrument.

That the data within the phone was capable of use as a weapon or posed some threat to Granville, inmates, or jail security has no evidentiary support, either. So, social views regarding the need to maintain prison discipline and decorum are of lesser concern here.

---

[1]This concept also poses a curiosity. Determining what society would deem reasonable or unreasonable seems little more than an exercise in self-expression. Though it connotes the idea of gauging the collective conscious of the people to see what they would think about the subject, no polls are taken, surveys conducted, or investigations made. *E.g., Oles v. State,* 993 S.W.2d 103 (Tex. Crim. App. 1999) (opining that society would not recognize the legitimacy of Oles' expectation of privacy without mentioning any polls or the like). Nor is Everyman sought out and asked. Rather, those drafting the opinion just seem to arrive upon a consensus as to what millions of other people would find acceptable or not. It would seem as though the answer could differ depending upon the "hood" from which the decision-maker came. Truly, Oliver Wendell Holmes was right in saying that law is not logic but experience.

So too is the potential for exceptional intrusion in one's private matters worth reiteration. Should the State's contention be accepted, it would be free to look for whatever it cared to just because it could. Exposing a detainee to having his private thoughts, relationships, finances, and the like to arbitrary intrusion seems antithetical to the societal and civil norm mandating the presumption of innocence until proven guilty. A detainee, like Granville, who is jailed for a class C misdemeanor is not even the type of prisoner that society thought should be placed in extended governmental control. Indeed, those convicted of such a misdemeanor are not susceptible to imprisonment upon conviction. TEX. PENAL CODE ANN. § 12.23 (West 2011) (stating that the punishment applicable to a class C misdemeanor is a fine).

Due to the potential invasiveness of the search, Granville's status as a pretrial detainee, the fact that his stay in jail for a class C misdemeanor would be of short duration, the utter lack of any nexus between the cell phone and the crime for which appellant was jailed, and the lack of evidence suggesting that the phone and its contents posed any risk to the jail's penalogical interests, we conclude that society would recognize his continued, and reasonable, privacy interest in the instrument despite his temporary detention. Indeed, holding that the mere impoundment of property does not vitiate all reasonable expectation of privacy in the item confiscated is nothing new. Law enforcement officials have long been barred from searching impounded vehicles in any manner that they may care to. *See South Dakota v. Opperman*, 428 U.S. 364, 372-73, 96 S.Ct. 3092, 3098-99, 49 L.Ed.2d 1000 (1976) (prescribing the way in which an inventory search of an impounded vehicle must occur for it to pass Fourth Amendment restrictions). As we recently acknowledged, if

11

impoundment vitiated all reasonable expectation of privacy, then there would be no reason for the requirements described by the United States Supreme Court in *South Dakota v. Opperman*, 428 U.S. at 372, our own Court of Criminal Appeals in *Kelley v. State,* 677 S.W.2d 34, 37 (Tex. Crim. App. 1984), or in *State v. Hill,* No. 07-11-0054-CR, 2011 Tex. App. LEXIS 6510, at *7-8 (Tex. App.–Amarillo, August 16, 2011, no pet.) (not designated for publication).  Thus, the simple act of a governmental body taking custody over personal property of another "does not put an end to all expectations of privacy." *State v. Hill, supra*.  Nor should it.  So, under the particular circumstances appearing of record, we cannot say that the search at bar passed constitutional muster.

In effect, the State fights to enable any, if not every, law enforcement officer the ability to walk into a property room, pick up whatever cell phone, ipad, ipod, or like device he may discover therein, turn it on, and use it as he cares to just because the device was within the property room.  The State pursues this end by saying little to nothing about the nature of the electronic instrument involved or the vast quantity of personal information about their owner and others that may be contained in them. Instead, it merely compares cell phones to articles of clothing despite their obvious difference.  More importantly, the authorities it cites in support of its position fall short of doing so.

For instance, the court in *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007), did conclude that text messages on a phone may be perused incident to an arrest. Despite not undertaking any type of analysis like that required by *Oles,* there is verbiage in the opinion suggesting that the court reached its decision because the search was truly incident to the arrest.  "[A]s long as the administrative processes incident to the

12

arrest and custody have not been completed, a search of effects seized from the defendant's person is still incident to the defendant's arrest," it observed. *Id.* at 260 n.7. It "*was still substantially contemporaneous with his arrest and was therefore permissible.*" *Id.* (Emphasis added.) That language hardly encompasses the situation we have here, that is, one where the suspect has had his property inventoried into the custody of the state as part of the jailing process and, several hours later, some stranger to the arrest comes to handle it for purposes completely unrelated to the arrest.

The same can be said of *United States v. Curtis*, 635 F.3d 704 (5th Cir. 2011), *cert. denied, ___ U.S. ___,* 132 L.Ed.2d 99, 181 L.Ed.2d 99 (2011), the other opinion relied upon by the State. It involved a search incident to arrest and relied on *Finley* to conclude as it did. But, then it took care to distinguish the circumstances before it from those encompassing perusal of the cell phone's contents as part of an inventory search. That an inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence" was acknowledged in *Curtis. Id.* at 712, *quoting Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). And, upon acknowledging it, the panel said:

> . . . [t]his was not an inventory search. The police were not cataloguing the items found in portions of Curtis's car outside of his reach. The search extended only to Curtis's person and the area within his immediate control. *Finley* authorizes a police officer to search the electronic contents of a cell phone recovered from the area within an arrestee's immediate control.

*Id.* In view of the language and caveats in both *Curtis* and *Finley*, neither suggest that any law enforcement officer is free to search cell phones inventoried as part of the booking process.

13

Research also reveals that there are courts that refuse to follow *Finley*. They do so after analyzing the purpose of a cell phone, the quantity of data stored in them, and the private nature of those contents. For example, the court in *Schlossberg v. Solesbee*, 2012 U.S. Dist. Lᴇxɪs 4431, at *13, noted that cell phones and cameras "are capable of holding large volumes of private information" and that "legitimate concerns exist regarding the effect of allowing warrantless searches of such devices." Often they "include some combination of email services and internet browsing" and the information stored within them may include "phonebook information, appointment calendars, text messages, call logs, photographs, audio and video recordings, web browsing history, electronic documents and user location information." *Id.* Consequently, "warrantless searches of such devices are not reasonable incident to a valid arrest absent a showing that the search was necessary to prevent the destruction of evidence, to ensure officer safety, or that other exigent circumstances exist," according to the court.[2]

The same was done in *State v. Smith*, 920 N.E.2d 949 (Ohio 2009), *cert. denied,* ___ U.S. ___, 131 S.Ct. 102, 178 L.Ed.2d 242 (2010). And, that analysis lead the Ohio Supreme Court to hold that 1) Smith had a reasonable expectation of privacy in his cell phone, 2) the phone was not a container, and 3) a warrant was needed before it could be searched. *Id.* at 954-55.

As we cautioned early on, we deal not with a warrantless search incident to arrest or one undertaken due to exigent circumstances. Nor do we deal with property found in a jail cell. Rather, we consider a warrantless search, by a stranger to an arrest,

---

[2]The court also determined that it was "impractical to distinguish between electronic devices-between a laptop and a traditional cell phone or a smart phone and a camera, before an officer decides whether to proceed with a search of the electronic device incident to arrest." *Schlossberg v. Solesbee*, No. 10-6014-TC, 2012 U.S. Dist. Lᴇxɪs 4431, at *14-15 (D. Or. January 13, 2012). While we need not go so far, we nevertheless acknowledge the similarities between each of those electronic devices and the privacy implications that may arise when each is manipulated by strangers.

14

of a cell phone taken as part of an inventory-conducted incident to jailing for evidence of a crime distinct from that underlying the owner's arrest. Nothing in those circumstances or the others mentioned herein nullify Granville's reasonable expectation of privacy in the phone searched. Nothing in them allowed the officer to act without a warrant. While assaults upon the Fourth Amendment and article I, § 9 of the United States and Texas Constitutions regularly occur, the one rebuffed by the trial court here is sustained. A cell phone is not a pair of pants.

The order of suppression entered below is affirmed.


Brian Quinn
Chief Justice


Publish.