IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1095-12






THE STATE OF TEXAS



v.



ANTHONY GRANVILLE, Appellee





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


WALKER COUNTY





 Keasler, J., filed a dissenting opinion.


D I S S E N T I N G O P I N I O N


 This case asks us to decide whether Granville retained a reasonable expectation of
privacy in the contents of his cell phone, which was seized by police during booking and
stored in a jail property room. The majority holds that he did retain such an expectation, on
the basis that the contents of a cell phone deserve heightened protection because a cell phone
can "receive, store, and transmit an almost unlimited amount of private information." (1) 
However, in reaching its result, the majority ignores the precedent of this court and sidesteps
the requirement that an individual manifest a "subjective expectation of privacy" in a space
before he has standing to challenge a law enforcement search under the Fourth Amendment. (2) 
Based on the record before us, Granville did not meet his burden to prove that subjective
expectation. I must respectfully dissent.

APPLICABLE LAW AND ANALYSIS

 Under the privacy-based model of the Fourth Amendment set forth by Katz v. United
States, (3) a search is unreasonable when an individual has a legitimate expectation of privacy
in the space being invaded by government agents. (4) A defendant has the burden to prove that
a legitimate expectation of privacy existed, and must do so by demonstrating that (1) by his
conduct, he exhibited an actual intention to preserve something as private, and (2) this
subjective expectation of privacy is one that society is prepared to recognize as reasonable. (5) 
If a defendant fails to meet this burden, he does not have standing to challenge a search. (6)

 Demonstrating a subjective expectation of privacy is not difficult. An individual
simply must, by his conduct, exhibit an "actual expectation of privacy; that is, whether he has
shown that he sought to preserve something as private." (7) However, in this case, because the
cell phone in question had already been seized from Granville and was in police custody at
the time of the search, Granville must overcome a heightened burden, based on the lowered
expectation of privacy that accompanies arrest and incarceration. (8) According to our decision
in Oles v. State, this heightened burden is applied to searches of "personal effects of an
arrestee" that have been lawfully seized by police. (9) An individual seeking to challenge a
search under these circumstances can only meet their burden by conduct that "can and does
exhibit subjective expectations [of privacy]." (10)

 As Oles provides the framework upon which the result in this case should be based,
an analysis of its facts is helpful. Melvin Oles was arrested pursuant to a warrant issued on
a motion to revoke probation, and his clothing was inventoried and stored as part of the
booking process. (11) Oles was also a suspect for murder, and eight days after his arrest and
without a warrant, an investigator took Oles's clothing to a medical examiner to determine
if the clothing held blood traces. (12) Oles challenged this subsequent examination of his
clothing as an improper search under the Fourth Amendment. (13)

 This Court addressed Oles's claim by determining whether he enjoyed both a
subjective and an objective expectation of privacy in his clothing after it had been seized and
inventoried. (14) Noting that "[n]o situation imaginable is as alien to the notion of privacy than
an arrestee sitting in a jail cell, completely separated from his effects that are lawfully
controlled and inventoried by the very police that are investigating him," we concluded that
Oles did not subjectively expect privacy in the seized clothing and that society would not
recognize an expectation of privacy in seized clothing as legitimate. (15) Our determination was
based on the fact that Oles could not point to evidence affirming either a subjective or
objective expectation of privacy in the clothing, and thus had not met the heightened burden
of proof required to establish an expectation of privacy in items seized and inventoried by
police. (16)

 This case is factually similar to Oles in many respects. There, as here, the personal
effects of an arrestee were seized and inventoried by police, and those personal effects were
later searched by law enforcement for evidence unrelated to the crime of arrest. As such, the
same burden that was applied to Oles should be required of Granville in this case. Granville 
can only establish that he retained a reasonable expectation of privacy in the contents of his
cell phone by (1) exhibiting affirmative conduct that reflects a subjective expectation of
privacy in the contents of the phone; and (2) by establishing that society is prepared to accept
that expectation of privacy as reasonable.

 Based on the record before us, Granville has failed to meet his burden of establishing
an actual, subjective expectation of privacy. As I will discuss below, the majority glosses
over the issue of Granville's subjective expectation. (17) However, the court of appeals
addressed it in some detail, (18) and justified its finding of a subjective expectation on two
grounds. First, according to the trial judge's findings of fact, Granville's "cell phone was
off" when Officer Harrell retrieved it from storage, and the office "had to turn it on to
manipulate its contents." However, the record is undeveloped as to the circumstances in
which the cell phone was turned off. Was the phone off at the time of its seizure, or did
Granville himself turn it off contemporaneously with his arrest? Did the arresting officer
turn it off of his own accord, or did Granville request the officer to do so? Or was the phone
turned off by law enforcement during the booking process, prior to being placed in storage? 
If law enforcement turned off the phone, was Granville aware that it did so? All that the
record reflects is that Harrell had to turn on the phone to access the photograph, and action
taken by a law enforcement officer alone cannot constitute affirmative conduct on
Granville's part that exhibits a subjective expectation of privacy.

 Second, the trial judge found that "Officer Harrell [s]earched the contents of the cell
phone until he found the photograph he sought." Based on that finding, the court of appeals
held that Harrell "had to pull up or scroll through the information imprinted on electronic
chips to uncover the photo. It was not exposed to anyone happening to touch the item . . .
." (19) However, the record does not support the conclusion that the officer "had to pull up and
scroll through . . . information." All that the record reflects about Harrell's manipulation of
Granville's phone is that he "looked at" the phone, "found" the improper photograph, and
somehow "retrieved" the photograph by "print[ing] it out directly from the phone." I agree
that when an individual takes steps to ensure that the object of police scrutiny is not readily
visible upon casual perusal, the subjective-expectation-of-privacy requirement may be
satisfied. But in this case, the record demonstrates next to nothing about the nature of the
search. Where was the photograph in question found within Granville's phone? Did it
immediately appear when Harrell turned on the phone, or was it set as the phone's wallpaper
or screen saver? Was the photo in an obvious location, or hidden in a folder or otherwise
made less accessible to an intruder? I pose these questions not in an attempt to define how
one maintains a subjective expectation of privacy in a cell phone, but merely to highlight the
present record's lack of factual development. The record does not reflect anything about the
location of the photo inside Granville's phone or any other facts that weigh in favor of
finding a subjective expectation of privacy.

 Bound by precedent from this Court and the Supreme Court and the bare record
presented in this case, I believe we are constrained to conclude that Granville failed to
demonstrate that he exhibited some conduct reflecting a genuine expectation of privacy in
the contents of his phone. As such, he failed to meet his burden and prove a reasonable
expectation of privacy therein.

THE MAJORITY OPINION

 The majority opinion, however, does not follow the clear guidelines of the Supreme
Court in reaching its decision. The majority does initially recognize that Granville prevails
if he can establish both an objective and a subjective expectation of privacy in the contents
of his phone. (20) But it stumbles when it attempts to define what constitutes a "subjective"
expectation of privacy. Instead of reviewing the record to determine whether Granville
exhibited affirmative conduct reflecting a subjective expectation of privacy in his phone, the
majority concludes that Granville retained a subjective expectation of privacy in his phone
based solely on the fact of his ownership of the device and the inherent nature of cell
phones. (21)

 The majority's determination of what constitutes subjective expectations of privacy
is predicated upon the proposition that "the object of the search makes all the
difference"--essentially an adoption of the court of appeals' assertion that "a cell phone is
not a pair of pants." (22) The majority rationalizes its decision by stating that "courts commonly
find that a person has a legitimate expectation of privacy in the contents of his cell phone
because of its ability to store large amounts of private data both in the cell phone itself and
by accessing remote services." (23) This generalization conflates the Supreme Court's
distinction between the objective and subjective requirements of the Fourth Amendment
standing test. I cannot agree that ownership of a particular type of property deemed "special"
by a reviewing court means that a defendant automatically enjoys a reasonable expectation
of privacy therein. Indeed, what kind of "special" treatment cell phones should receive with
respect to the Fourth Amendment is hotly disputed. For example, the First Circuit Court of
Appeals' opinion United States v. Wurie, which figures prominently in the majority opinion,
is pending review in the Supreme Court. (24) Presumably, the Court has granted certiorari to
address the differing positions courts across the nation have adopted when tackling this
sensitive issue. (25)

 The majority spends a significant amount of time discussing how cell phones both
contain vast amounts of private data in and of themselves, and how they can be used to
access additional data via remote services and other devices. It is concerned that "[t]he
potential for invasion of privacy, identity theft, or, at a minimum, public embarrassment is
enormous." (26) Ultimately, I share those concerns and agree that the ubiquity of cell phones
and the vast amount of personal data that is commonly stored or accessible therein establishes
that society is prepared to accept an expectation of privacy in the contents of a cell phone as
legitimate. After all, this second prong of the standing test--which essentially "legitimizes"
a defendant's subjective expectation of privacy--necessarily looks to "sources outside of the
Fourth Amendment, either by reference to concepts of real or personal property law or to
understandings that are recognized and permitted by society." (27)

 But the fact that cell phones potentially contain vast amounts of private data, by itself,
does not automatically result in a finding of a reasonable expectation of privacy in every
case. Mere possession of an object does not automatically confer Fourth Amendment
standing upon the possessor. In Villarreal v. State, a case involving the search of a house,
we stated that "whether the accused had a property or possessory interest in [a] place
invaded" was only one of many factors to be considered when making a determination of
whether a defendant had established a reasonable expectation of privacy. (28) As stated above,
in order to prove a subjective expectation of privacy, a defendant must have engaged in
affirmative conduct exhibiting that such an expectation existed. (29) Making possession the
deciding factor in a subjective-expectations analysis makes even less sense in a case such as
this, where Granville's expectations of privacy are necessarily lessened by his
incarceration--when the phone was searched, Granville did not presently possess it, and he
knew that it was in the hands of law enforcement officers who had the means, if not the legal
right, to search it for incriminating evidence.

 Despite these constraints on possession as a deciding factor in a subjective-expectations analysis, the majority has hinged its entire analysis on this one element. The
majority has pointed to no evidence that supports a finding of a subjective expectation of
privacy, other than the fact that Granville owned the phone in question. Indeed, it goes so
far as to imply that Granville automatically enjoys a reasonable expectation of privacy in his
phone--solely on the grounds that he owns it--by stating that a person may "lose" his
reasonable expectation of privacy when he abandons a phone or lends it to another. (30) By so
stating, the majority mischaracterizes the burdens imposed by the Fourth Amendment's
standing doctrine. The burden is on the defendant to prove a reasonable expectation of
privacy, not on the State to disprove that such an expectation exists. (31)

 To reach its conclusion, the majority must get around Oles. In that case, this Court 
clearly held that the burden is on the defendant to establish subjective expectations of
privacy (32)--a far cry from the majority's conclusion that ownership of a cell phone alone
bestows automatic standing to challenge a Fourth Amendment search. The majority attempts
to distinguish Oles by limiting its holding to clothing alone, but can cite to no authority that
justifies this limitation. (33) Instead, the majority relies on Judge Keller's concurring opinion. 
Judge Keller stated that she would have decided Oles on the basis of a variation of the plain
view doctrine--that is, a reasonable expectation of privacy does not exist when a space is
routinely exposed to the public, even where a search results in the discovery of information
"that a naked-eye examination would not give them." (34) The majority applies this reasoning
to the search in this case, indicating that police would have been free to analyze the exterior
of Granville's phone, but not the phone's contents, which were hidden from the public eye. (35)

 What the majority overlooks in its analysis is that, once again, a subjective expectation
of privacy does not turn on what is or is not observable by the public. Such a consideration
could only be one factor among many in either the subjective or objective prong of a
reasonable-expectations analysis. What is missing from the majority's analysis of Granville's
subjective expectation of privacy is a consideration of the totality of the circumstances--a
consideration required by our precedent and by the Supreme Court. (36) And in this case, the
record before us does not provide us with any evidence that Granville affirmatively exhibited
a subjective expectation of privacy in his phone beyond the fact that he was its owner. If the
majority believes that Oles was decided in error, it should say so and explain why--instead
of conforming to the view of a concurring opinion that, at the time, received the vote of no
judge except its author.

CONCLUSION

 The majority's concerns about potential abuse by law enforcement are well-founded. 
But the majority's resolution of this case has no basis in the law. The fact that a defendant's
situation reflects a compelling public interest is not a sufficient reason to gloss over the
Supreme Court's clearly articulated constitutional rules. Where the record lacks any
evidence demonstrating a defendant's affirmatively expressed expectation of privacy, we
cannot draw inferences or conjure up evidence to reach a desired result. I feel constrained
to dissent.



DATE FILED: February 26, 2014

PUBLISH
1. Majority op. at 12.
2. Smith v. Maryland, 442 U.S. 735, 740 (1979).
3. Katz v. United States, 389 U.S. 347, 350-51 (1967).
4. Rakas v. Illinois, 439 U.S. 128, 149 (1978); Granados v. State, 85 S.W.3d 217,
222-23 (Tex. Crim. App. 2002).
5. Smith, 442 U.S. at 740; Oles v. State, 993 S.W.2d 103, 108 (Tex. Crim. App.
1999).
6. Rakas, 439 U.S. at 143.
7. Bond v. United States, 529 U.S. 334, 338 (2000) (quoting Smith, 442 U.S. at
740).
8. Oles, 993 S.W.2d at 108.
9. Id. at 108 n.7, 110.
10. Id. at 110 (emphasis in original).
11. Id. at 105.
12. Id.
13. Id.
14. Id. at 106.
15. Id. at 109.
16. Id. at 110-11.
17. See Majority op. at 9-12.
18. Granville, 373 S.W.3d 218, 224 (Tex. App.--Amarillo 2013).
19. Id.
20. Majority op. at 7-8.
21. Id. at 25.
22. Id. at 22; see also Granville, 373 S.W.3d at 227.
23. Majority op. at 11 (quotation omitted).
24. United States v. Wurie, 728 F.3d 1 (1st Cir. 2013), cert. granted, 82 U.S.L.W.
3104 (U.S. Jan. 17, 2014) (No. 13-212).
25. Compare id. at 6 (because of the unique nature of cell phones, a bright line rule
must be crafted, forbidding searches incident to arrest of cell phones) with People v.
Riley, No. D059840, 2013 WL 475242, at *8 (Cal. App. Feb. 8, 2013) (not designated for
publication), cert. granted, 82 U.S.L.W. 3082 (U.S. Jan. 17, 2014) (No. 13-132) (when a
cell phone is found "of the person" of an arrestee, it may be freely searched incident to
arrest); United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007) (cell phones are no
different from other containers and therefore may be freely searched incident to arrest).
26. Id. at 12.
27. Rakas, 439 U.S. at 143 n. 12.
28. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); see also
Rakas, 439 U.S. at 143 n. 12.
29. Bond, 529 U.S. at 338.
30. Majority op. at 12-13.
31. See Mancusi v. DeForte, 392 U.S. 364, 368 (1968).
32. Oles, 993 S.W.2d at 110.
33. See Majority op. at 22-23.
34. Oles, 993 S.W.2d at 111 (Keller, J., concurring).
35. Majority op. at 23.
36. See, e.g., Bond, 529 U.S. at 338 (analyzing the defendant's interaction with his
bag, which was later searched by law enforcement, to determine whether he exhibited
subjective expectations of privacy therein); Threadgill v. State, 146 S.W.3d 654, 660-61
(Tex. Crim. App. 2004) (finding that the defendant did not meet his burden when he
could point to no evidence illustrating a subjective expectation of privacy).