OPINION
COCHRAN, J.,
delivered the opinion of the Court
in which KELLER, P.J., and MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and ALCALA, JJ„ joined.
This case raises the issue of whether a person retains a legitimate expectation of privacy in the contents of his cell phone when that phone is being temporarily stored in a jail property room.[1] The trial judge granted Anthony Granville’s motion to suppress, concluding that the high-school student did not lose his legitimate expectation of privacy in his cell phone simply because it was being stored in the jail property room after he had been arrested for a Class C misdemeanor. The court of appeals affirmed that ruling.[2] We granted the SPA’s petition for discretionary review, but we reject its argument that a modern-day cell phone is like a pair of pants or a bag of groceries, for which a person loses all privacy protection once it is checked into a jail property room. We therefore affirm the judgment of the court of appeals.
I.
One morning, Anthony Granville was arrested for the Class C offense of causing a disturbance on the school bus. His cell phone was taken from him during the booking procedure and placed in the jail property room. Later that day, Officer Harrell, a Huntsville Police “School Resources Officer,” was told that, the day before he was arrested, Mr. Granville had used his cell phone to take a photograph of another student urinating in the boys’ bathroom. Officer Harrell, who was not involved in arresting Mr. Granville, then drove to the jail and retrieved the cell phone from the jail property room. He examined its contents without first getting a warrant. The officer turned on the phone, which had been turned off. He went through it until he found the photograph he was looking for, then took the phone to his office, and printed a copy of the photograph. He kept the phone as evidence.
Mr. Granville was charged with the state-jail felony of Improper Photography, and he filed a motion to suppress, arguing that Officer Harrell could not search his cell phone without a warrant. At the hearing on the motion to suppress, both Officer Harrell and the prosecutor contended that if an officer has probable cause, he may search anything in the jail *403 property room that belongs to a jail inmate. There are no exceptions. The trial judge tested this hypothesis by asking the prosecutor, “[D]o you agree that there is an expectation of privacy on the information the person has on their cell phone?” The prosecutor responded, “If you have it in your possession and not committed a crime, sure.” She elaborated further:
I think if you’re in the Walker County jail you have no expectation of privacy in the personal effects that you had on you at the time that you were arrested.... His expectation of privacy is diminished in those effects until he can and does exhibit subjective expectations through his conduct, presumably at the time of his release from detainment or incarceration.
Defense counsel disagreed: “[I]t is clear that everybody in this room has some subjective belief that their cell phone is private and it doesn’t matter if it is lawfully seized by the cops.”
The trial judge posed the legal issue nicely:
So if I get arrested for jay walking out here this afternoon and get put in jail, any officer in town can go out there and go through my phone, cell phone, and might discover that I have a picture of Prometheus chained to a rock in the mountains and an eagle eating his liver out?
Yes, said the State; “If an officer has probable cause to believe that you committed a crime or evidence of that crime [is] on your phone, then, yes he can look at it. Otherwise, no he can’t look at your phone because he wants to. He has to have probable cause.”
After studying the law, the trial judge granted the motion to suppress and entered findings of fact, concluding that the cell phone was the personal property of Anthony Granville; Officer Harrell took possession of it without a warrant; and the officer “searched the contents of the cell phone until he found the photograph he sought.”[3] Based on his factual findings, the trial judge concluded that Anthony *404 Granville had a subjective, reasonable, and legitimate expectation of privacy in his cell phone “even when that cell phone [was] in the jail inventory of an accused.” Because Officer Harrell had neither a search warrant nor exigent circumstances to make a warrantless search of that phone, the trial judge granted the motion to suppress.[4]
The State appealed, and the court of appeals affirmed, finding that (1) a person “has a general, reasonable expectation of privacy in the data contained in or accessible by his cell, now ‘smart’ phone,”[5] and (2) a person continues to have a reasonable expectation of privacy in the contents of his cell phone even though it has been placed in a jail property room for safekeeping.[6] The court of appeals ended its opinion with a rhetorical flourish, noting that “[a] cell phone is not a pair of pants,” like the pants and shoes whose warrantless seizure from the jail property room and later search and testing we upheld in Oles v. State.[7]
II.
Appellate courts afford almost total deference to a trial judge’s findings of fact in a suppression hearing as long as those factual findings are supported by the record.[8] We also view his factual findings in the light most favorable to his ruling.[9]
*405 The Fourth Amendment states that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated.”[10] The term “papers and effects” obviously carried a different connotation in the late eighteenth century than it does today. No longer are they stored only in desks, cabinets, satchels, and folders. Our most private information is now frequently stored in electronic devices such as computers, laptops, iPads, and cell phones, or in “the cloud” and accessible by those electronic devices.[11] But the “central concern underlying the Fourth Amendment” has remained the same throughout the centuries; it is “the concern about giving police officers unbridled discretion to rummage at will among a person’s private effects.”[12] This is a case about rummaging through a citizen’s electronic private effects-a cell phone-without a warrant.
A. Standing: A Cell Phone Owner Has Both a Subjective and Reasonable Expectation of Privacy in His Cell Phone.
A person has “standing” to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as “reasonable” or “legitimate.”[13] The “standing” doctrine ensures that a person may claim only that his own rights have been violated; he cannot assert that he is entitled to benefit because the rights of another have been violated.[14] A person’s constitutional right to be free from unreasonable searches is a personal right that cannot be asserted vicariously.[15]
Courts have held that (1) a person has a subjective expectation of privacy in the contents of his cell phone,[16] and (2) this *406 expectation of privacy is one that society recognizes as reasonable and legitimate.[17]
A person’s subjective expectation of privacy in a cell phone that he owns and possesses is supported by decades of cases on “standing.”[18] A defendant normally has “standing” to challenge the search of places and objects that he owns. For example, a homeowner has standing to challenge a search of his home.[19] And a per *407 son generally has standing to challenge the search or seizure of a car he owns.[20]
A “legitimate” expectation of privacy acknowledges the lawfulness of the person’s “subjective” expectation of privacy. As the Supreme Court has explained,
a “legitimate” expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as “legitimate.” His presence ... is “wrongful”; his expectation is not “one that society is prepared to recognize as ‘reasonable.’” And it would, of course, be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases. Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, ... and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.[21]
The factors that courts use in deciding whether a person has a reasonable expectation of privacy in the place or object searched include the following:
(1) whether the defendant had a proprietary or possessory interest in the place or object searched;[22]
(2) whether the defendant’s presence in or on the place searched was legitimate;
(3) whether the defendant had a right to exclude others from the place or object;
*408 (4) whether the defendant took normal precautions, prior to the search, which are customarily taken to protect privacy in the place or object;
(5) whether the place or object searched was put to a private use;
(6) whether the defendant’s claim of privacy is consistent with historical notion of privacy.[23]
Ownership or legal possession of the property searched is not the “be-all-end-all” in deciding whether a person has a legitimate expectation of privacy in it. But courts commonly find that a person has a legitimate expectation of privacy in the contents of his cell phone because of its “ability to store large amounts of private data” both in the cell phone itself and by accessing remote services.[24] This data may involve the most intimate details of a person’s individual life, including text messages, emails, banking, medical, or credit card information, pictures, and videos.[25] A cell phone is unlike other containers as it can receive, store, and transmit an almost unlimited amount of private information.[26]
*409 The potential for invasion of privacy, identity theft, or, at a minimum, public embarrassment is enormous.[27]
B. An Arrestee Normally Has an Expectation of Privacy in the Contents of his Cell Phone That Is Being Temporarily Stored in a Jail Property Room.
Although a person may have a reasonable and legitimate expectation of privacy in the contents of his cell phone, he may lose that expectation under some circumstances, such as if he abandons his cell phone,[28] lends it to others to use, or gives his consent to its search.[29] Courts across the country have wrestled with questions of when he might lose his reasonable expectation of privacy in other situations, perhaps if he is arrested and police perform a search of his cell phone incident to arrest[30] or, as here, of his cell phone stored in the jail property room.
*410 Under the Fourth Amendment, police officers may search an arres-tee incident to a lawful arrest.[31] The justification for permitting such a warrantless search is (1) the need for officers to seize weapons or other things which might be used to assault on officer or effect an escape, and (2) the need to prevent the loss or destruction of evidence.[32] A search is incident to arrest only if it is “substantially contemporaneous” with the arrest and is confined to the area within the immediate control of the arrestee.[33] Thus, a search incident to arrest cannot normally be justified if the “ ‘search is remote in time or place from the arrest’ ... or no exigency exists.”[34]
In United States v. Edwards,[35] the Supreme Court recognized an exception to the “substantially contemporaneous” search-incident-to-arrest doctrine and upheld a warrantless search of an arrestee’s clothes at the police station ten hours after the arrest.[36] In Edwards, the police took the arrestee’s clothes to look for evidence of paint chips that would match samples *411 that had been taken from the window of the post office during the attempted burglary.[37] The police waited these ten hours because “it was late at night” and they had no other clothes for Edwards to wear; “it would certainly have been unreasonable for the police to have stripped [Edwards] of his clothing and left him exposed in his cell throughout the night.”[38] The Court cautioned, however, that in upholding this particular search and seizure of an arres-tee’s clothing, it had “not conclud[ed] that the Warrant Clause of the Fourth Amendment is never applicable to postarrest seizures of the effects of an arrestee.”[39]
We relied upon the Edwards ruling and rationale in Oles v. State,[40] in holding that the warrantless search of an arrestee’s clothing was not unlawful because the defendant failed to establish a subjective and reasonable expectation of privacy in the clothing he wore when arrested and that had been placed in the jail property room.[41] We explained that “arrestees do retain some level of privacy interest in the personal effects or belongings taken from them incident to their arrest,”[42] but that there is a lesser subjective expectation of privacy and a lesser societal expectation of privacy in inventoried property.[43] Of course, there is a vast difference between the privacy interests and expectations in clothing that one is wearing when arrested and certain other possessions that one might have with them.
Indeed, just a few years after deciding Edwards, the Supreme Court addressed the scenario of a 200-pound footlocker that had been seized when the defendant was arrested leaving a train station, but that was not searched until 90 minutes later and was no longer in the arrestee’s possession.[44] The Court held that the evidence obtained from that search must be suppressed because the footlocker “was property not immediately associated with the arrestee” at the time of the search.
[O]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or *412 destroy evidence, a search of that property is no longer incident to the arrest.[45]
In such circumstances, the police may legitimately “seize” the property and hold it while they seek a search warrant.[46] But they may not embark upon a general, evidence-gathering search, especially of a cell phone which contains “much more personal information ... than could ever fit in a wallet, address book, briefcase, or any of the other traditional containers that the government has invoked.”[47]
With that general background, we turn to the present case.
III.
In this case, the court of appeals summarized its holding and reasoning as follows:
Due to the potential invasiveness of the search, Granville’s status as a pretrial detainee, the fact that his stay in jail for a class C misdemeanor would be of short duration, the utter lack of any nexus between the cell phone and the crime for which appellant was jailed, and the lack of evidence suggesting that the phone and its contents posed any risk to the jail’s penalogical interest, we conclude that society would recognize his continued, and reasonable, privacy interest in the instrument despite his temporary detention.[48]
The .SPA argues that the court of appeals erred because an arrestee “has no legitimate expectation of privacy in the personal effects immediately associated with his person at the time of lawful arrest.” [49] In the SPA’s view, Oles was “incorrect to hold that expectations of privacy in jail are only diminished-rather than nonexistent-and the court of appeals’[s] decision results directly from that holding and the unnecessary analysis performed to decide that case.”[50] According to the SPA, when a citizen is arrested for any offense, such as failing to wear a seat belt,[51] everything that the person possessed at the time of that arrest-purse, briefcase, laptop computer, cell phone, medical records, IRS returns, trade secret information-is subject to a warrantless search because all of that citizen’s privacy interests have completely disappeared. We cannot agree with this reasoning.
First, the SPA fails to distinguish between a search incident to arrest and a *413 search of an arrestee’s personal property that has already been inventoried and placed in storage. As the Supreme Court recently explained in Arizona v. Gant,[52] the search incident to an arrest exception to the warrant requirement is premised upon promoting officer safety and preventing the destruction of evidence relating to the crime for which the person was arrested.[53] Although Gant involved the search of a car, courts have discussed its application to other situations in which “the item searched is removed from the suspect’s control between the time of his arrest and the time of the search.”[54] Some courts have applied Gant in rejecting the lawfulness of a search of the contents of an arrestee’s cell phone.[55]
*414 Second, the SPA makes the false analogy that, if a jail detainee does not have any privacy rights in his jail cell,[56] he therefore does not have any privacy rights in his personal property that is being safeguarded in the jail property room. The assumption that prisoners or pretrial detainees are without any Fourth Amendment rights is not supported by the Supreme Court. As a unanimous Court noted in 1974:
Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a “retraction justified by the considerations underlying our penal system.” ... But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country.[57]
Oles correctly held that jail detainees enjoy a diminished expectation of privacy, not that a detainee has absolutely no reasonable expectation of privacy.[58] Furthermore, the security rationale and “needs of the institution” that underpin the diminished expectation of privacy in a jail cell is not equally applicable to property that jailers have already inventoried and are safeguarding in the property room.[59]
*415 Third, the SPA contends that, under Oles, any search of any property in the custody of jail officials is permissible. We disagree with that absolutist position and agree with the court of appeals that the object of the search makes all the difference between this situation and that in Oles.[60] There, the police seized and tested a pair of pants and shoes for blood. We noted that the first question was “whether an arrestee retains any expectation of privacy in clothing lawfully taken and inventoried by police incident to an arrest.”[61] After analyzing various precedent, we concluded that “arrestees do retain some level of privacy interest in the personal effects or belongings taken from them incident to their arrest,” but that
[reviewing this search under a totality of the circumstances, there is virtually no evidence that [defendant] harbored a subjective expectation of privacy in his clothing that was in the custody of the police, nor is there evidence that society would deem such a belief reasonable under these circumstances. [Defendant] has failed to meet his burden of proof in establishing a legitimate expectation of privacy in his clothing.[62]
That is the general doctrine concerning privacy interests in clothing, but clothing does not contain private banking or medical information and records; it does not contain highly personal emails, texts, photographs, videos, or access to a wide variety of other data about the individual citizen, his friends and family. Searching a person’s cell phone is like searching his home desk, computer, bank vault, and medicine cabinet all at once. There is no doubt that the Fourth Amendment protects the subjective and reasonable privacy interest of citizens in their homes and in their personal “papers and effects.” Conversely, clothing, like the shoes seized and tested in Oles, is displayed every time a citizen walks out into the world. As now-Presiding Judge Keller noted in her concurrence in Oles,
The outside of a person’s shoes while being worn are constantly exposed to the public. When [the defendant] was arrested and incarcerated, the police obtained lawful possession of his shoes. Given that the outside of the shoes are *416 constantly exposed to the public, appellant could not have a reasonable expectation of privacy against a visual inspection of the shoes, on the outside, with the naked eye.[63]
Similarly, here, the officers could have reasonably inspected the outside of appellant’s cell phone; they could have tested it for fingerprints or DNA material because portions of the cell phone are routinely exposed to the public. But we do not think that a citizen, including appellant, has lost his expectation of privacy in the contents of his cell phone merely because he has been arrested and his cell phone is in the custody of police for safekeeping.
Although some courts have held that a person does not have a reasonable expectation of privacy in the contents of his cell phone when he is subjected to a search incident to arrest,[64] citizens themselves have become increasingly concerned about privacy expectations and their cell phones,[65] even before the current NSA phone controversy.[66]
*417 In sum, we conclude, as did the court of appeals, that a cell phone is not like a pair of pants or a shoe. Given modern technology and the incredible amount of personal information stored and accessible on a cell phone, we hold that a citizen does not lose his reasonable expectation of privacy in the contents of his cell phone merely because that cell phone is being stored in a jail property room. Officer Harrell could have seized appellant’s phone and held it while he sought a search warrant, but, even with probable cause, he could not “activate and search the contents of an inventoried cellular phone” without one. We answer “No” to the SPA’s sole question for review, and we affirm the judgment of the court of appeals.
KELLER, P.J., filed a concurring opinion in which PRICE, J., joined.
KEASLER, J., filed a dissenting opinion.

. We granted the State Prosecuting Attorney's (SPA's) sole ground for review which asks,
May law enforcement, with or without probable cause, activate and search the contents of an inventoried cellular phone that was immediately associated with the person at the time of his lawful arrest?

. State v. Granville, 373 S.W.3d 218, 227 (Tex.App.-Amarillo 2012) (fact that defendant’s cell phone was in jail property room did nothing to "nullify” his "reasonable expectation of privacy in the phone searched.”).

.The trial judge’s complete findings of fact are as follows:
1. Anthony Granville was arrested and jailed for a class C misdemeanor of Disruption of School Transportation.
2. When booked into the Walker County Jail, Anthony Granville's personal effects were taken from him by Walker County Jail personnel and placed into his property.
3. Among the items taken from Anthony Granville by Walker County Jailers was a cell phone.
4. The cell phone taken from Anthony Gran-ville was the personal property of Anthony Granville.
5. After his incarceration, Officer Everett Harrell, a school resource officer at the school Anthony Granville attends, heard from others at the school that Anthony Granville had taken a photograph of another student.
6. Believing the taking of the photograph to be a possible criminal offense, Officer Harrell went to the Walker County Jail and took possession of Anthony Granville’s cell phone.
7. The cell phone was off and Officer Harrell had to turn it on to manipulate its controls.
8. Officer Harrell [s]earched the contents of the cell phone until he found the photograph he sought.
9. Officer Harrell seized the cell phone and checked it into property at the Huntsville Police Department.
10. Based on the content of the photograph allegedly taken by Anthony Granville, Anthony Granville was charged with the State Jail Felony offense of Improper Visual Photography.
11. At the time Officer Harrell took possession of Anthony Granville's phone, he had no valid search warrant.
12. Officer Harrell had sufficient time to obtain a search warrant for the contents of Anthony Granville’s cell phone.
13. Officer Harrell took possession of Anthony Granville’s cell phone and could have *404 held it until a warrant could have been obtained.
14. No exigent circumstances existed that would have necessitated circumventing the search warrant requirement.

.The trial judge's full conclusions of law were as follows:
1. Officer Everett Harrell had no valid search warrant when he seized the cell phone belonging to Anthony Granville.
2. Exigent circumstances did not exist to lawfully circumvent the necessity of obtaining a search warrant.
3. The seizure of Anthony Granville’s cell phone was not accomplished as a search incident to arrest.
4. To the extent that probable cause was necessary for Officer Harrell to search the contents of Anthony Granville’s cell phone, the Court finds that the State of Texas did not meet its burden in demonstrating probable cause as it wholly failed in its evidence to show that Officer Harrell had in his possession at the time he took possession of Anthony Granville’s cell phone sufficient information to believe that a criminal offense has been committed by Anthony Granville, specifically that he did not state in his testimony that he had information that the photograph was taken without the consent of the student photographed or that the photograph was taken with the intent to invade the student's privacy.
5. The Court finds that Anthony Granville had a reasonable expectation of privacy in the contents of his cell phone.
6. The Court finds that Anthony Granville demonstrated subjective expectation of privacy in the contents of the cell phone.
7. The Court finds that the expectation of privacy in the contents of one’s cell phone is reasonable and one that society accepts as legitimate, even when that cell phone is in the jail inventory of an accused.

. Granville, 373 S.W.3d at 223.

. Id. at 224-27.

. 993 S.W.2d 103 (Tex.Crim.App.1999).

. State v. Duran, 396 S.W.3d 563, 570 (Tex.Crim.App.2013) ("Appellate courts afford almost total deference to the trial judge’s determination of facts (if those facts are supported by the record) when they review a suppression ruling.”); see, e.g., State v. Betts, 397 S.W.3d 198, 204 (Tex.Crim.App.2013) (deferring to trial judge’s factual findings and upholding trial judge's determination that defendant had reasonable expectation of privacy in his aunt’s back yard where he kept his dogs).

. Kothe v. State, 152 S.W.3d 54, 59 (Tex.Crim.App.2004) (appellate courts must defer to the trial judge’s factual findings concerning a person's expectation of privacy and view them in the light most favorable to the prevailing party; ultimate legal issue of standing is reviewed de novo).

. U.S. Const, amend. IV.

. See Bryan A. Stillwagon, Note, Bringing an End to Warrantless Cell Phone Searches, 42 Ga. L.Rev. 1165, 1194 (2008).

. Arizona v. Gant, 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

. Minnesota v. Olson, 495 U.S. 91, 95-97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (an overnight guest in another’s home has a legitimate privacy interest in that premises and thus may challenge its search); Kothe v. State, 152 S.W.3d at 59 (Tex.Crim.App.2004) ("Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. He must prove that he was a "victim” of the unlawful search or seizure. He has no standing to complain about the invasion of someone else’s personal rights.”) (footnotes omitted).

. Olson, 495 U.S. at 95, 110 S.Ct. 1684 ("Since the decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it has been the law that 'capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' ”) (quoting Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)).

. Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable”).

. See United States v. Wurie, 612 F.Supp.2d 104, 109 (D.Mass.2009) ("It seems indisputable that a person has a subjective expectation of privacy in the contents of his or her cell phone.”), rev’d on other grounds, 728 F.3d 1 (1st Cir.2013), cert. granted, - U.S. -, 134 S.Ct. 999, 187 L.Ed.2d 848, 82 U.S.L.W. 3104 (2014) (upholding defendant's privacy interest and holding that warrantless search of cell phone taken from an arrestee was unconstitutional). As the First Circuit explained in Wur-ie:
*406 We suspect that the eighty-five percent of Americans who own cell phones and "use the devices to do much more than make phone calls,” ... would have some difficulty with the government’s view that "Wurie’s cell phone was indistinguishable from other kinds of personal possessions, like a cigarette package, wallet, pager, or address book, that fall within the search incident to arrest exception to the Fourth Amendment’s warrant requirement. In reality, "a modern cell phone is a computer,” and "a computer ... is not just another purse or address book.”
Id. at 8 (citations omitted); see also United States v. DiMarco, 2013 WL 444764, *10 (S.D.N.Y. Feb. 5, 2013) (quoting Wurie and stating, "given the unique and significant information-storing capabilities of the modem cell phone, [defendant] did have a privacy interest in the cell phone that the NYPD officers found in his pocket” when they arrested him); People v. Taylor, 296 P.3d 317, 321 (Colo.App.2012) (quoting Wurie and "assuming” that the defendant "had a reasonable expectation of privacy in his cellular telephone’s call history”); see generally Schlossberg v. Solesbee, 844 F.Supp.2d 1165, 1170 (D.Or.2012) (”[P]ersonal electronic devices such as cameras and cell phones cannot be considered closed containers” as "these devices are capable of holding large volumes of private information.... On a daily basis citizens may carry with them digital cameras, smart phones, ipads (or other tablets) and laptops. These devices often include some combination of email services and internet browsing. Potential information stored on them includes: phonebook information, appointment calendars, text messages, call logs, photographs, audio and video recordings, web browsing history, electronic documents and user location information. Wayne Jansen & Rick Ayers, Nat’l Inst, of Standards and Tech., Guidelines on Cell Phone Forensics 56 (2007), available at http://csrc.nist.gov/ publications/nistpubs/800-101/SP800-101. pdf.’’).

.See, e.g., United States v. Finley, 477 F.3d 250, 259 (5th Cir.2007) (rejecting government’s position that because cell phone belonged to his employer, defendant did not have standing to challenge search of cell phone; defendant had use of phone and took normal precautions to protect privacy of phone calls and records even though he did not have password protection); United States v. Lopez-Cruz, 730 F.3d 803, 808-09 (9th Cir.2013) (upholding trial judge’s finding that defendant who was in possession of cell phones and was using them had a reasonable expectation of privacy in them; no evidence that defendant did not legitimately possess the phones or that he failed to take normal precautions to maintain privacy by abandoning them or throwing them away when he was stopped by agents); United States v. Quintana, 594 F.Supp.2d 1291, 1299 (M.D.Fla.2009) ("An owner of a cell phone generally has a reasonable expectation of privacy in the electronic data stored on the phone.”); State v. Carroll, 322 Wis.2d 299, 778 N.W.2d 1, 10-11 (2010) (defendant had a reasonable expectation of privacy in his cell phone); United States v. Davis, 787 F.Supp.2d 1165, 1170 (D.Or.2011) (finding "[a] person has a reasonable expectation of privacy in his or her personal cell phone, including call records and text messages”); United States v. Gomez, 807 F.Supp.2d 1134, 1141 (S.D.Fla.2011) (defendant had a reasonable expectation of privacy in his cell phone).

. When asked at oral argument about specific evidence that Mr. Granville had a subjective expectation of privacy in his cell phone, defense counsel recalled his law-school memory of res ipsa loquitur, the notion that "the thing speaks for itself.” It was, after all, a cell phone. Just as one assumes that a person has a subjective privacy interest in his diary, in his medical records, in his bank records, in the content of his telephone calls, and in the content of his personal computer, one may assume, without further proof, that a person has a subjective privacy interest in his cell phone.

. Alderman v. United States, 394 U.S. 165, 176-80, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) *407 (a person’s property interest in his own home was so great as to allow him to object to electronic surveillance of conversations emanating from his home, even though he himself was not a party to the conversations).

. United States v. Jones, - U.S. -, 132 S.Ct. 945, 950-53, 181 L.Ed.2d 911 (2012) (trespass upon car by placing GPS device on its underbelly was an invasion of property rights and constituted a Fourth Amendment search).

. Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citations omitted).

. In a supplemental brief, the SPA argues that the recent decisions in United States v. Jones, — U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) and Florida v. Jardines, - U.S. -, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) superceded the Katz “expectation of privacy" model with the former common-law Fourth Amendment jurisprudence based on property law. The SPA suggests that these two views of the Fourth Amendment are mutually exclusive, but the Supreme Court has stated that they are complementary, not incompatible. Jones, 132 S.Ct. at 952 (stating that “the Katz reasonable-expectation-of-privacy test [was] added to, not substituted for, the common-law trespassory test.”). The federal courts that have addressed the issue have agreed with this understanding. See, e.g., United States v. Thomas, 726 F.3d 1086, 1092 (9th Cir.2013) (Fourth Amendment violation may arise under both the Jones common-law trespassory test or the Katz reasonable-expectation-of-privacy test); United States v. Jackson, 728 F.3d 367, 374 (4th Cir.2013) ("The Jardines analysis does not end the Fourth Amendment inquiry, however, because, as Jardines itself makes clear, ‘property rights are not the sole measure of Fourth Amendment violations’ and '[tjhe Katz reasonable-expectations test has been added to ... the traditional property-based understanding of the Fourth Amendment.’ ”) (quoting Jardines, 133 S.Ct. at 1414, 1417).

. Granados v. State, 85 S.W.3d 217, 223 (Tex.Crim.App.2002); see also United States v. Cardoza-Hinojosa, 140 F.3d 610, 615 (5th Cir.1998) (assessing a defendant's reasonable expectation of privacy by considering whether he has a property or " 'possessory interest in the thing seized or the place searched, whether he has a right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy[,] and whether he was legitimately on the premises’ ") (quoting United States v. Ibarra, 948 F.2d 903, 906 (5th Cir.1991)).

. State v. Smith, 124 Ohio St.3d 163, 920 N.E.2d 949, 955 (2009) ("Although cell phones cannot be equated with laptop computers, their ability to store large amounts of private data gives their users a reasonable and justifiable expectation of a higher level of privacy in the information they contain. Once the cell phone is in police custody, the state has satisfied its immediate interest in collecting and preserving evidence and can take preventive steps to ensure that the data found on the phone are neither lost nor erased. But because a person has a high expectation of privacy in a cell phone's contents, police must then obtain a warrant before intruding into the phone’s contents.”); United States v. Gomez, 807 F.Supp.2d 1134, 1140-41 (S.D.Fla.2011) (defendant had standing to contest search of his cell phone and a reasonable expectation of privacy in its text messages).

. See United States v. Wurie, 728 F.3d 1, 9 (1st Cir.2013), cert. granted, — U.S. -, 134 S.Ct. 999, 187 L.Ed.2d 848, 82 U.S.L.W. 3104 (2014) (the contents of cell phones are, "by and large, of a highly personal nature: photographs, videos, written and audio messages (text, email, and voicemail), contacts, calendar appointments, web search and browsing history, purchases, and financial and medical records.... Indeed, modern cell phones provide direct access to the home in a more literal way as well; iPhones can now connect their owners directly to a home computer’s webcam, via an application called iCam, so that users can monitor the inside of their homes remotely. 'At the touch of a button a cell phone search becomes a house search, and that is not a search of a "container” in any normal sense of that word, though a house contains data.' ”) (citations omitted).

.See United States v. Flores-Lopez, 670 F.3d 803, 805 (7th Cir.2012) ("A modern cell phone is in one aspect a diary writ large. Even when used primarily for business it is quite likely to contain, or provide ready access to, a vast body of personal data. The potential invasion of privacy in a search of a cell phone is greater than in a search of a ‘container’ in a conventional sense even when the conventional container is a purse that contains an address book (itself a container) and photos. Judges are becoming aware that a computer (and remember that a modern cell phone is a computer) is not just another purse or address book.”); see also, Maeve Duggan & Lee Rainie, Pew Research Ctr.’s Internet & Am. Life Project, Cell Phone Activities 2012, at 2 (2012), available at http:// pewinternet.org7media//Files/Reports/2012/ PIP_CellActivities_11.25.pdf (noting that 29% of cell phone owners use their phones for online banking, and 31% access medical in *409 formation); Elizabeth Woyke, Debate Over Warrantless Cellphone Searches Heats Up, Forbes (Sept. 7, 2011), available at http:// www.forbes.com/sites/elizabethwoyke/2011/ 09/07/debate-over-warrantless/cellphone-searches-heatsup/ (allowing such warrantless searches would expose sensitive information commonly stored on businesspersons' cell phones to governmental view).

. See, e.g., Newhard v. Borders, 649 F.Supp.2d 440, 443-44 (W.D.Va.2009) (former school teacher and his girlfriend sued police for invasion of privacy when defendant was arrested for DUI, officers took cell phone that his girlfriend had lent him, accessed nude photographs of himself and girlfriend in compromising positions, then shared photographs with other officers, which led to public notoriety and loss of his teaching position).

. See United States v. Powell, 732 F.3d 361, 374-75 (5th Cir.2013) (when defendant-passenger disclaimed any personal connection to cell phone found in car, she lacked standing to contest its warrantless search by police officer); compare United States v. Lopez-Cruz, 730 F.3d 803, 808-09 (9th Cir.2013) (arrestee did not abandon his privacy interest in cell phones when he denied ownership of them and said they belonged to a friend because he was in possession of them and using them when he was stopped by border-patrol agent).

. See Lopez-Cruz, 730 F.3d at 809-11 (defendant consented for border patrol agent to "look through” his cell phone, but scope of that consent did not include answering incoming calls).

. Because the State did not rely upon the "search incident to arrest” doctrine in the trial court, the court of appeals did not address that doctrine in its opinion. We will not do so either, but we do note that two separate certiorari petitions have been granted by the United States Supreme Court on the issue of whether the cell phone of an arrestee may be searched without a warrant under the "search incident to arrest” doctrine. Riley v. California, - U.S. -, 134 S.Ct. 999, 187 L.Ed.2d 847, 82 U.S.L.W. 3082 (2014); United States v. Wurie, - U.S. -, 134 S.Ct. 999, 187 L.Ed.2d 848, 82 U.S.L.W. 3104 (2014). The legal issue in the present case is similar to, but not the same as, that in Riley and Wurie which came to opposite conclusions; the California court of appeals upheld the warrantless search as incident to an arrest, while the First Circuit held that such a warrantless search violated the Fourth Amendment. Courts across the nation are split on this issue. Compare Smallwood v. State, 113 So.3d 724, 735-38 (Fla.2013) (condemning warrantless search of cell phone as part of a search incident to arrest); State v. Smith, 124 Ohio St.3d 163, 920 N.E.2d 949, 956 (2009) (same), cert. denied, — U.S. -, 131 S.Ct. 102, 178 L.Ed.2d 242 (2010), with United States v. Murphy, 552 F.3d 405, 411-12 (4th Cir.2009) (need to preserve evidence justified officers’ warrantless retrieval of call records and text messages from cell phone of suspected narcotics arrestee), cert. denied, 556 U.S. 1196, 129 S.Ct. 2016, 173 L.Ed.2d 1109 (2009); United States v. Finley, 477 F.3d 250, 259-60 (5th Cir.2007) (although arrestee has a reasonable expectation of privacy in his cell phone and thus had standing to complain about search, warrantless search of cell phone was permissible as incident to arrest).
Even if the State had relied upon the "search incident to arrest” doctrine in this case, we note that the majority of recent cases that have considered the issue in the context *410 of a cell-phone search have held that the search must be contemporaneous (or nearly so) to the arrest itself. See, e.g., Murphy, 552 F.3d at 411 (initial search of cell phone occurred when arrestee handed phone to arresting officer); United States v. Santillan, 571 F.Supp.2d 1093, 1102 (D.Ariz.2008) (search of cell phone occurred "mere minutes after the arrest and seizure”); United States v. Curry, No. 07-100, 2008 WL 219966, *10 (D.Me. Jan. 23, 2008) (not designated for publication) (search of cell phone was "substantially contemporaneous” with arrest). Some courts have held that cell-phone searches that were not closely contemporaneous were not made incident to arrest. See, e.g., United States v. Gibson, 2012 WL 1123146, *10 (N.D.Cal. April 3, 2012) (not designated for publication) (search of cell phone was not incident to arrest when search took place approximately one to two hours after arrest); United States v. Lasalle, 2007 WL 1390820, *7 (D.Hawai’i May 9, 2007) (not designated for publication) (search of cell phone was not incident to arrest where search was conducted "somewhere between two hours and fifteen minutes to three hours and forty-five minutes” after arrest); United States v. Park, 2007 WL 1521573, *7 (N.D.Cal. May 23, 2007) (not designated for publication) (search of cell phone was not incident to arrest when search took place ninety minutes after arrest); see also United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (concluding that search of locked trunk ninety minutes after an arrest was too remote in time and place to be incident to the arrest); see generally, Jana L. Knott, Is There an App For That? Reexamining the Doctrine of Search Incident to Lawful Arrest in the Context of Cell Phones, 35 Okla. City L.Rev. 445, 445-47 (2010).

. United States v. Robinson, 414 U.S. 218, 224-26, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (citing Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (officer who had made full-custody arrest for driving a car without a permit could conduct warrantless search of person as part of that arrest; when officer found crumpled cigarette pack in arrestee’s pocket, he could seize the heroin capsules that he found within that pack)).

. Id.

. Vale v. Louisiana, 399 U.S. 30, 33, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

. United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); see also Schlossberg v. Solesbee, 844 F.Supp.2d 1165, 1167-71 (D.Or.2012) (declining to distinguish between electronic devices such as cell phones, digital cameras, and laptops, and holding that a warrantless search of the contents of a digital camera as a search incident to arrest violated the Fourth Amendment); United States v. Lasalle, No. 07-00032 SOM, 2007 WL 1390820, *7 (D.Hawai’i May 9, 2007) (not designated for publication) (because police officer did not search cell phone contemporaneously with defendant's arrest, the "search incident to arrest” doctrine did not apply; motion to suppress granted).

. 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

. Id. at 805, 94 S.Ct. 1234.

. Id. at 801-02, 94 S.Ct. 1234.

. Id. at 805, 94 S.Ct. 1234.

. Id. at 808, 94 S.Ct. 1234; see id. at n. 9 ("Holding the Warrant Clause inapplicable in the circumstances present here does not leave law enforcement officials subject to no restraints.”) (emphasis added).

. 993 S.W.2d 103 (Tex.Crim.App.1999). We noted the distinctions between the situation in Oles and that in Edwards, including the facts that (1) Oles's clothes didn’t show any obvious signs of blood, whereas the clothes in Edwards were "blood-spattered"; (2) Oles’s clothes were taken eight days after his arrest, whereas the police took Edwards’s clothes just ten hours after his arrest; (3) there was clear probable cause to search Edwards’s clothing, whereas there was not probable cause to believe that Oles's clothes contained bloodstain evidence relevant to the murder until the clothes had actually been tested. Based upon those distinction, we concluded that "although Edwards and Marquez [v. State, 725 S.W.2d 217 (Tex.Crim.App.1987)] provide the foundation for today’s ruling, clearly they are not dispositive of the issues presented in the instant case.” Id. at 107-08.

. Id. at 108-11.

. Id. at 108.

. Id. at 109-10.

. United States v. Chadwick, 433 U.S. 1, 4, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), overruled on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); see United States v. Han, 74 F.3d 537, 542 n. 2 (4th Cir.1996) (Chadwick has been overruled only as to closed containers seized from inside an automobile).

. Chadwick, 433 U.S. at 15, 97 S.Ct. 2476. See also Thornton v. United States, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring) ("When officer safety or imminent evidence concealment or destruction is at issue, officers should not have to make fine judgments in the heat of the moment. But in the context of a general evidence-gathering search, the state interests that might justify any overbreadth are far less compelling.”).

. Chadwick, 433 U.S. at 13, 97 S.Ct. 2476.

. United States v. Wurie, 728 F.3d 1, 9 (1st Cir.2013) ("Just as customs officers in the early colonies could use writs of assistance to rummage through homes and warehouses, without any showing of probable cause linked to a particular place or item sought, the government’s proposed rule would give law enforcement automatic access to 'a virtual warehouse’ of an individual’s 'most intimate communications and photographs without probable cause’ if the individual is subject to a custodial arrest, even for something as minor as a traffic violation.”).

. Granville, 373 S.W.3d at 225.

. SPA’s Brief at 3.

. Id. at 3-4.

. See, e.g., Atwater v. Lago Vista, 532 U.S. 318, 354-55, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (officers could arrest and jail mother who, along with her children, was not wearing a seat belt in her truck; officers at jail made her remove her shoes, jewelry, and eyeglasses, and detained her in a jail cell).

. 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

. Id. at 351, 129 S.Ct. 1710. In Gant, police officers arrested the defendant for driving with a suspended license, handcuffed him, and locked him in the back of a patrol car. Id. at 335, 129 S.Ct. 1710. Then the police searched his car and found cocaine in the pocket of a jacket that had been lying in the back seat. The Supreme Court held that this search was unlawful under the "search incident to arrest” exception because, under that exception, officers may search the passenger compartment of a car "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or if it is reasonable to believe that the vehicle contains evidence of the offense of arrest.” Id. at 351, 129 S.Ct. 1710.

. United States v. Shakir, 616 F.3d 315, 318 (3d Cir.2010) (applying Gant to search of a gym bag that was lying at arrestee's feet when he was arrested and handcuffed; upholding search because defendant was still close to gym bag, was not fully secure, and handcuffs are not fail-safe in preventing dangerous acts by an arrestee); see also United States v. Perdoma, 621 F.3d 745, 750-52 (8th Cir.2010) (applying Gant principles to search incident to arrest in bus terminal).

. See United States v. Wurie, 728 F.3d 1, 3 (1st Cir.2013), cert. granted, — U.S. -, 134 S.Ct. 999, 187 L.Ed.2d 848, 82 U.S.L.W. 3104 (2014) (citing Gant and holding that "the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person, because the government has not convinced us that such a search is ever necessary to protect arresting officers or preserve destructible evidence.”); United States v. DiMarco, No. 12 CR 205(RPP), 2013 WL 444764, *8 & *11-12 (S.D.N.Y. Feb. 5, 2013) (not designated for publication) (citing Gant and concluding that warrantless search of arrestee’s cell phone more than six hours after defendant’s arrest was unlawful; "delayed search” was not incident to arrest nor supported by the officer-safety and evidence-protection justifications of that exception); United States v. Dixon, - F.Supp.2d -, -, 2013 WL 6055396, *3 (N.D.Ga.2013) (citing Gant and concluding that agent’s action of taking arrestee’s cell phone back to his office and searching it was not a search incident to arrest and was unlawful; motion to suppress granted); United States v. Brown, No. 12-79-KKC, 2013 WL 1185223, *3 (E.D.Ky. March 20, 2013) (not designated for publication) (citing Gant and upholding initial, brief search of cell phone that was immediately incident to arrest because defendant was "manipulating” cell phone at time officers ordered him out of truck; defendant could have been warning confederate to escape or requesting assistance from him, or he could have been destroying evidence on cell phone; but once officers determined that "no helpful information was readily available” on arrestee’s phone, officers should have ceased search of phone’s "contact list” and sought a warrant); Anthony v. Oliva, No. ED CV 12-1369-FMO, 2013 WL 1127104, *6-7 (C.D.Cal. Jan.29, 2013) (not designated for publication) (citing Gant and holding that civil-rights plaintiff had pled a cause of action against police department when officers allegedly went beyond legitimate purpose of search incident to arrest and began to "look” and "navigate” through cell phone); State v. Cooper, No. 66-CR-l 1-2228, 2013 WL 264430, *5 (Minn.Ct.App. Jan. 14, 2013) (not designated for publication) (citing Gant and upholding trial court’s suppression of search of cell phone made long after officer had seized it from arrestee, who could not have retrieved it); see also State v. Smith, 124 Ohio St.3d 163, 920 N.E.2d 949, 955 (2009) (noting, in a case involving the warrantless search of an arrestee’s cell phone incident to *414 arrest, that: "Once the cell phone is in police custody, the state has satisfied its immediate interest in collecting and preserving evidence and can take preventive steps to ensure that the data found on the phone are neither lost nor erased. But because a person has a high expectation of privacy in a cell phone’s contents, police must then obtain a warrant before intruding into the phone’s contents.”).

. See Hudson v. Palmer, 468 U.S. 517, 527-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding “that the Fourth Amendment has no applicability to a prison cell” because of the needs of institutional security; "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continued surveillance of inmates and their cells required to ensure institutional security and internal order.”).

. Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citation omitted).

. Oles, 993 S.W.2d at 108; see Bell v. Wolfish, 441 U.S. 520, 556-57, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("It may well be argued that a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a person.... In any case, given the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope. Assuming, arguendo, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment.”); see also United States v. Cohen, 796 F.2d 20, 23-24 (2d Cir.1986) (detainee “retains an expectation of privacy within his cell sufficient to challenge the investigatory search ordered by the prosecutor” to get evidence to aid them "in laying additional indictments against a detainee”; search was unrelated to jail-security concerns); Lowe v. State, 203 Ga.App. 277, 416 S.E.2d 750, 752 (1992) (pretrial detainee had reasonable expectation of privacy in papers in his cell containing his handwriting because search was unrelated to needs of jail and was an attempt to find evidence to bolster State's case); State v. Neely, 236 Neb. 527, 462 N.W.2d 105, 112 (1990) (pretrial detainee retained reasonable expectation of privacy in her luggage while it remained in the jail’s locked inventory).

. See, e.g., Illinois v. Lafayette, 462 U.S. 640, 648, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (as part of routine procedure incident to jailing an arrested person, officers may "search any container or article in [police] possession, in accordance with established inventory procedures.”; emphasizing that inventory search must be conducted pursuant to established procedures); Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (inventory searches must be conducted pursuant to *415 established inventory procedures, so that they do not become "a ruse for a general rummaging in order to discover incriminating evidence.”).

. In Oles, the defendant was initially detained at the police station as a witness to a murder. When officers discovered that he had an outstanding felony warrant, they arrested him, then inventoried and stored his clothing. Eight days later, while the defendant was still in jail, an investigator took his clothing to the medical examiner if see if he could find any blood. A serologist discovered blood on the defendant’s shoes that matched the victim's blood. 993 S.W.2d at 105.

. Id. at 106.

. Id. at 110-11. In Oles, we did not state, or even suggest, that a defendant would never have a reasonable expectation of privacy in any item that was in the custody of the police. Suppose, for example, that the officer in Oles had taken a sealed personal letter out of the defendant’s clothes, opened it, and read it. At least one court has said that the Fourth Amendment would not permit that officer to open and read someone’s else’s mail without a warrant. See United States v. Wall, No. 08-60016-CR, 2008 WL 5381412, *3 (S.D.Fla.2008) (not designated for publication) (war-rantless search of cell phone made during jail booking was improper; stating that "searching through information stored on a cell phone is analogous to a search of a sealed letter, which requires a warrant.”) (citing United States v. Jacobsen, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless search of such effects are presumptively unreasonable.”)).

. Oles, 993 S.W.2d at 111 (Keller, J., concurring). Judge Keller went on to note that, because the police could also legitimately handle and store the shoes, "even the inside of the shoes would be exposed to the officers,” so that the defendant did not have a reasonable expectation of privacy in either the inside or outside of the shoes. Id.

. See, e.g., United States v. Flores-Lopez, 670 F.3d 803, 810 (7th Cir.2012) (upholding search incident to arrest of cell phone to obtain its phone number but questioning whether a more invasive search would be permissible); United States v. Finley, 477 F.3d 250, 259-60 (5th Cir.2007) (stating that a cell phone is just another "container” and upholding its search as incident to arrest); People v. Diaz, 51 Cal.4th 84, 119 Cal.Rptr.3d 105, 244 P.3d 501, 506-08 (2011) (upholding search of cell phone 90 minutes after the arrest of narcotics defendant; concluding that a search of an item "immediately associated with the person” at the time of arrest is valid because of "reduced expectations of privacy caused by the arrest,” not the nature of the item seized). In Diaz, the court recognized that it was contributing to a deepening split between state and federal courts on whether a person has a reasonable expectation of privacy in the contents of his cell phone, but left it to the United States Supreme Court to decide if modern technology makes a difference to the traditional ability to search the contents of containers as part of an otherwise legitimate search incident to arrest.
The citizens of California disagreed with the California Supreme Court's holding, and the California Legislature promptly passed a bill requiring police to obtain a search warrant before searching the contents of any " 'portable electronic devices,' including cell phones.” Supplemental Brief in Opposition, Diaz v. California, - U.S. -, 132 S.Ct. 94, 181 L.Ed.2d 23 (2011) (describing Senate Bill 914 (2011)). After the state’s attorneys brought that legislation to the attention of the United States Supreme Court and urged the Court to deny Diaz’s writ of certiorari, the Court did so, and, one week later, California's governor vetoed the "cell phone privacy” bill, stating that the "courts are better suited to resolve the complex and case-specific issues relating to constitutional search-and-seizures protections.” Letter from Edmund G. Brown Jr., Governor, to Members of the California State Senate (Oct. 9, 2011), available at http:// www.leginfo.ca.gov/pub/1 l_12/bill/sen/sb_ 090 l-0950/sb_914_vt_20111009.html. See also Petition for Certiorari at 6, Riley v. California, No. 13-132, available at http://www. volokh.com/wp-content/uploads/2013/08/ Riley-cert-petition-flna

. See, e.g., United States v. Wurie, 728 F.3d 1, 8 (1st Cir.2013), cert. granted - U.S. -, 134 S.Ct. 999, 187 L.Ed.2d 848, 82 U.S.L.W. 3104 (2014) (quoting Maeve Duggan & Lee Rainie, Pew Internet and American Life Project, Privacy and Data Management on Mobile Devices (Sept. 5, 2012)) (publishing poll survey results that “[mjore than half of mobile app users have uninstalled or avoided cell phone apps because of privacy concerns,” and "[njearly one third of cell owners have experienced a lost or stolen phone, and 12% have had another person access the contents of their phone in a way that made them feel their privacy was invaded”; "[t]he rise of the smartphone has dramatically altered the relationship between cell owners and their phones when it comes to monitoring and safe *417 guarding their personal information,” said Aaron Smith, a Research Associate with the Project and report co-author. "The wealth of intimate details stored on smartphones makes them akin to the personal diaries of the past— the information they contain is hard to replace if lost, and potentially embarrassing in the wrong hands.”), available at http://www. pewinternet.org/Press-Releases/2012/Mobile-Privacy, aspx.

. Compare Klayman v. Obama, 957 F.Supp.2d 1, 35 (D.D.C.2013) (citing numerous internet data compilations concerning the ubiquity of cell phones and other technological devices and noting, "Put simply, people in 2013 have an entirely different relationship with phones than they did thirty-four years ago. As a result, people make calls and send text messages now that they would not (really, could not) have made or sent back when” earlier search and seizure cases were decided). Judge Leon explained, "Records that once would have revealed a few scattered tiles of information about a person now reveal an entire mosaic — a vibrant and constantly updating picture of the person’s life. Whereas some may assume that these cultural changes will force people to reconcile themselves to an inevitable diminution of privacy that new technology entails, I think it is more likely that these trends have resulted in a greater expectation of privacy and a recognition that society views that expectation as reasonable.” Id. at 36 & n. 59 (noting, "Public opinion polls bear this out.” See, e.g., Associated Press, 9/11 Anniversary: Poll Finds Public Doubts Growing on Federal Surveillance, Privacy, Hous. Chron., Sept. 11, 2013, at A6 ("Some 56 percent oppose the NSA’s collection of telephone records for future investigations even though they do not include actual conversations.”)), with ACLU v. Clapper, 959 F.Supp.2d 724, 749-52 (S.D.N.Y.2013) (NSA's collection of "bulk telephony metadata” did not violate Fourth Amendment principles; "Some ponder the ubiquity of cellular telephones and how subscribers’ relationships with their telephones have evolved since Smith. While people may 'have an entirely different relationship with telephones than they did thirty-four years ago,’ this Court observes that their relationship with their telecommunications providers has not changed and is just as frustrating. Telephones have far more versatility now than when Smith was decided, but this case only concerns their use as telephones. The fact that there are more calls placed does not undermine the Supreme Court’s finding that a person has no subjective expectation of privacy in telephony meta-data.”) (citation to Klayman omitted).