**Affirmed and Opinion Filed June 17, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-01606-CR**

**No. 05-14-01607-CR**

**No. 05-14-01608-CR**

**JOE LEWIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F13-41242-X; F13-41243-X; F13-41244-X**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Bridges, and Justice Evans
Opinion by Justice Bridges

Joe Lewis appeals his possession with intent to deliver cocaine in an amount of four grams or more but less than 200 grams in cause number 05-14-01606-CR, possession with intent to deliver methamphetamine in an amount of more than one gram but less than four grams in cause number 05-14-01607-CR, and possession of marijuana in an amount of five pounds or less but more than four ounces in cause number 05-14-01608-CR.[1] A jury convicted appellant, and the trial court sentenced him to thirty years' confinement in cause numbers 05-14-01606-CR and 05-14-01607-CR and fifteen years' confinement in cause number 05-14-01608-CR. In a single

---

[1] The record contains the State's notice of intent to offer extraneous offenses including two robberies, burglary of a motor vehicle, two burglaries of a habitation, burglary of a building, possession of a controlled substance, possession of a controlled substance with intent to deliver, and unlawful possession of a firearm by a felon.

issue, appellant argues the trial court erred in finding the search warrant for a cellular phone was valid. We affirm the trial court's judgments.

In January 2012, Mesquite police officer Andrew Chance began surveillance on a residence in Mesquite, Texas. Chance had received information from a confidential informant that appellant was "dealing crack cocaine and marijuana" at the residence. Chance sent another confidential informant into the residence to buy drugs from appellant. Chance and another investigator watched as the confidential informant gave a white female at the residence the money for the drugs, and the female gave the money to appellant. The confidential informant returned to Chance with crack cocaine and marijuana he had purchased. A field test confirmed the nature of the controlled substances. Both before and after the confidential informant purchased drugs, Chance observed "hand-to-hand transactions" at the residence. In the course of his surveillance, Chance had observed appellant and the female in a certain vehicle coming and going to and from the residence, and it appeared appellant and the female were operating together in the sale of narcotics and living together at the residence.

Chance obtained a search warrant, which he executed on January 9, 2012. Chance went to the residence and observed appellant arrive in a pickup truck Chance had previously identified during surveillance. Officers detained appellant outside the residence and took appellant's keys to open the front door of the residence. During the course of their search, officers discovered crack cocaine, methamphetamine, and marijuana inside the residence. Officers also recovered prescription pill bottles with appellant's name on them. Appellant was arrested and, in October 2013, appellant was indicted on the charged offenses.

At the beginning of trial, the trial court indicated the State had come into possession of some cell phone records, "but the detective hadn't furnished it." The records consisted of over 140 text messages and "pictures." Defense counsel responded that the records were a surprise

and asked the trial court to suppress the evidence. The prosecutor explained that a detective, when he checked the evidence for trial, "noticed that there was a phone in there and recalled he had a search warrant done and brought a disc which contained about 150 photographs of text messages from the phone that was seized at the location" where appellant was arrested. Because the evidence was obtained pursuant to a valid search warrant, the prosecutor argued, the evidence was admissible. The trial court excluded the evidence because the State "produced it late" but did not "question its admissibility otherwise."

Following the presentation of the State's case-in-chief, appellant presented the testimony of Rene Colson. Colson testified she has two children with appellant, and she assisted appellant with his medication and was helping him file for disability. Colson lived at the residence where appellant was arrested, and she was also arrested for the underlying offenses. Colson testified the prescription bottles with appellant's name on them were at her house because she helped "distribute" appellant's medications to him. Colson testified the drugs at her residence were hers, and she "made a bad decision to get them and try to sell them." Colson testified appellant's role in selling drugs from Colson's residence was "nothing," appellant was not present when drugs were being prepared for sale, he never exchanged drugs for money, and the drugs were "put up" when appellant was around. Colson reiterated that appellant was "an innocent man" who "stayed medicated all the time" and was not "aware of what's going on around him."

After the defense rested, in a hearing outside the presence of the jury, the State again offered into evidence "the text records we would now use in rebuttal based on statements from" Colson. In response to a question from the trial court, the prosecutor stated he had given defense counsel copies of the text records and the disc the day before. Defense counsel again argued the records should be suppressed, stating "we don't know how these records were obtained. We don't know who these phones belong to. And we just don't know enough about it." The

prosecutor explained "[t]hese are the cell phones that were at the scene they got the search warrant for to – and had searched two days later." The trial court made the following statement:

> I think it's been opened up. I suppressed them yesterday because they are late – produced late, you hadn't had a chance to view them. But I – in view of Ms. Colson's testimony, I think they become relevant.

The State responded that it had a certified copy of the search warrant and was attempting to recall Chance, "who would be the witness to lay that predicate." The trial court admitted the cell phone search warrant, stating the following:

> I think we're at the point now where I found the search warrant is a good warrant. Search warrant for the cell phone is good. I find it states the probable cause in the four corners. Have already found the search warrant of the residence was good. So that cell phone this warrant goes toward was recovered during that search. I find it's admissible . . . .

Mesquite police officer Prudencio Solis then testified that he submitted an affidavit for a search warrant to search a cell phone that was found when the police executed the warrant on January 9, 2012. The prosecutor questioned Solis about texts recovered from the cell phone including a text that said "Come on joe please . . bring me 40" and another that said "Your x wife mrs lewis (smile)." Other texts referred to "Dimes no more nickels" and another said, among other things, "I have your weed." The trial court then admitted the texts into evidence.

The jury returned to the courtroom, and Solis again testified concerning the drug-related texts. On cross-examination, Solis testified he did not know if the cell phone was registered to appellant, but it was recovered either from appellant's person or at the residence. Chance was recalled and testified on cross-examination that he could not say the cell phone was taken from appellant's person. Colson was also recalled and testified that, when she was making drug transactions, she used appellant's phone, which was Colson's old phone that she had given to appellant. Colson testified there were times when she and appellant used the same telephone, but appellant did not use text messaging because "he didn't understand how to do it." Colson

–4–

testified that, on January 9, 2012, the cell phone was not on Colson's person but was "at the house." She testified the cell phone was not "where [appellant] was" because "he wasn't in the house at that time." The jury convicted appellant of the charged offenses, and these appeals followed.

In a single issue, appellant argues the trial court erred in finding the search warrant for a cellular phone was valid. Specifically, appellant argues the affidavit in support of the search warrant was conclusory, relied on suspicion and speculation, and failed to provide a nexus between the information believed to be contained on the phone and appellant. The State responds that appellant does not have standing to complain about the search of the cell phone. The State points out that appellant never tried to prove he had standing to challenge the search of the phone, and the defensive theory was that the cell phone belonged to Colson.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.* Proof of a reasonable expectation of privacy is at the forefront of all Fourth Amendment claims. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). A person has standing to contend that a search was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as reasonable or legitimate. *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). A person has a subjective expectation of privacy in the contents of his own cell phone and this expectation of privacy is one that society recognizes as reasonable and legitimate. *Id.* at 405–06 (factors that courts use in deciding whether person has reasonable expectation of privacy in searched object include whether defendant had proprietary or possessory interest in object searched and whether he had right to exclude others from object).

Appellant does not argue that he had any subjective expectation of privacy in the cell phone that was searched. Instead, he challenges the sufficiency of the affidavit supporting the search warrant. At trial, appellant also made no arguments concerning standing. Appellant relied on Colson's testimony that the phone was hers, appellant never texted, and appellant was "an innocent man" who "stayed medicated all the time" and was not "aware of what's going on around him." At most, Colson's testimony shows there were times when she and appellant used the same telephone.

Thus, appellant's complaint is about the search of a phone that did not belong to him. We have found no cases in support of the proposition that an individual can have an expectation of privacy in the cell phone of another. *See United States v. Powell*, 732 F.3d 361, 375 (5th Cir. 2013) (defendant who denied ownership of cell phone lacked standing to later challenge admissibility of records it contained), *cert. denied*, 134 S.Ct. 1326 (2014); *see also Granville*, 423 S.W.3d at 409 (noting that person may lose expectation of privacy in personal cell phone if he lends it to others). Further, we think it clear that any claim of an expectation of privacy in text messages sent to another person and found on that person's cell phone would not be one society is prepared to recognize as reasonable and legitimate. Appellant did not have standing to complain of the search of Colson's cell phone. The trial court did not abuse its discretion in overruling appellant's objection to admission of the text messages. We overrule appellant's single issue.

We affirm the trial court's judgments.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141606F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE LEWIS, Appellant

No. 05-14-01606-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1341242-X.
Opinion delivered by Justice Bridges. Chief Justice Wright and Justice Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 17, 2016.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOE LEWIS, Appellant

No. 05-14-01607-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1341243-X.
Opinion delivered by Justice Bridges. Chief Justice Wright and Justice Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 17, 2016.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOE LEWIS, Appellant

No. 05-14-01608-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1341244-X.
Opinion delivered by Justice Bridges. Chief Justice Wright and Justice Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 17, 2016.